```
UNITED STATES DISTRICT COURT
EASTEN DISTRICT OF NEW YORK
------------------------------------------------------------X
REINA SORIANO, on behalf of herself and all     :
others similarly situated,                       :
                                                 :
                        Plaintiff,               :
                                                 :
        -against-                                :    COLLECTIVE AND
                                                 :    CLASS ACTION
D & J EXPORT, INC. d/b/a D&J EXPORT, INC.,       :    COMPLAINT
AMERICAN PREMIUM RAGS INC. d/b/a D&J             :
EXPORT, INC., JAIME SANCHEZ, and DANNY           :
SALMERON,                                        :
                                                 :
                        Defendants.              :
------------------------------------------------------------X
```

Plaintiff Reina Soriano ("Soriano" or "Plaintiff"), on behalf of herself and all others similarly situated, by her attorneys Pechman Law Group PLLC, complaining of defendants D & J Export, Inc. d/b/a D&J Export, Inc., American Premium Rags Inc. d/b/a D&J Export, Inc. (collectively, "D&J Export," which includes both corporations operating under the same name), Jaime Sanchez, and Danny Salmeron (collectively with D&J Export, "Defendants"), alleges:

## NATURE OF THE ACTION

1. Starting in January 2017, D&J Export, self-described in its website as a "Top Notch Grader & Exporter of American Used Clothing," stopped paying its employees overtime wages. Instead, the company began to pay Soriano and her coworkers by splitting their weekly hours into two paychecks, and paid them at a straight time hourly rate for all hours worked, including those over forty. Moreover, Defendants' wage statements failed to reflect all hours that their employees worked per workweek and they failed to provide their employees with wage notices upon hiring.

2. Soriano, on behalf of herself and all others similarly situated, brings this action to recover unpaid overtime wages, statutory damages, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law § 190 *et seq.* ("NYLL"), and the New York Wage Theft Prevention Act ("WTPA").

## JURISDICTION

3. This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1337, and has supplemental jurisdiction over Plaintiff's claims under the NYLL and WTPA pursuant to 28 U.S.C. § 1367.

## VENUE

4. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391 because the events giving rise to this Complaint occurred at D&J Export, which is located and operated by Defendants at 103-40 178th Street, Jamaica, New York 11433, in the Eastern District of New York.

## THE PARTIES

**Plaintiff Reina Soriano**

5. Soriano resides in Queens, New York.

6. Soriano was employed at D&J Export from in or about September 2013 to September 8, 2017, separating and packing new and second-hand clothing.

**Defendant D & J Export, Inc. d/b/a D&J Export, Inc.**

7. D & J Export, Inc. is a New York corporation that owns and operates D&J Export.

8. D & J Export, Inc. has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise

2

working on goods or materials that have been moved in or produced for interstate commerce by any person.

9. Within the three years prior to the filing of this Complaint, D & J Export, Inc. had an annual gross volume of sales of at least $500,000.

**Defendant American Premium Rags Inc. d/b/a D&J Export, Inc.**

10. American Premium Rags Inc. is a New York corporation that also owns and operates D&J Export.

11. American Premium Rags Inc. has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

12. Within the three years prior to the filing of the Complaint, American Premium Rags Inc. had an annual gross volume of sales of at least $500,000.

**Defendant Jaime Sanchez**

13. Jaime Sanchez ("Sanchez") is an owner of D&J Export.

14. Sanchez exercises sufficient control over D&J Export's operations to be considered Soriano's employer under the FLSA and NYLL.

15. Throughout Soriano's employment, Sanchez had authority over personnel decisions at D&J Export, including the power to discipline employees, hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

16. For example, Sanchez hired Soriano in 2013 to sort and package new and second-hand clothing at D&J Export.

17. Since January 2017, Sanchez signed checks for American Premium Rags Inc.

3

18. On occasion, Sanchez has sent some employees home for misconduct.

19. Throughout Soriano's employment, Sanchez was regularly present in the business ordering supplies and managing other aspects of the business such as taking inventory, handling accounting, and signing paychecks.

**Defendant Danny Salmeron**

20. Danny Salmeron ("Salmeron") is an owner of D&J Export.

21. Salmeron exercises sufficient control over D&J Export's operations to be considered Soriano's employer under the FLSA and NYLL.

22. Throughout Soriano's employment, Salmeron had authority over personnel decisions at D&J Export, including the power to discipline employees, hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

23. For example, since January 2017, Salmeron signed checks for D & J Export Inc.

24. Salmeron sent Soriano home for half a day on August 30 and Sept 4, 2017, because she had an unexcused absence.

25. In September 2017, Salmeron fired Soriano.

26. From the time Sorano started working at D&J Export in 2013 through the end of her employment, Sanchez was regularly present in the business directing employees' work.

**D & J Export, Inc. and American Premium Rags Inc. Are Joint Employers**

27. D & J Export, Inc. and American Premium Rags Inc. have a high degree of interrelated and unified operations, centralized control of labor relations, common control, common business purposes, interrelated business goals, and common ownership.

28. Sanchez and Salmeron are both owners of D&J Export.

29. Although Sanchez holds himself out as the owner of D & J Export, Inc. and Salmeron holds himself out to be the owner of American Premium Rags Inc., both men have equal control over and share all of employees of D&J Export. For example, when Soriano requested days off, she could approach either one of them for permission to be out for the full day.

30. Both Sanchez and Salmeron had the authority to dismiss employees for the day when work was done.

31. Both Sanchez and Salmeron had the authority to fire employees on behalf of both corporate entities operating at D&J Export.

32. Sanchez and Salmeron both appear in a promotional video for D&J Export that was posted on https://www.youtube.com/watch?v=1OHUUjheMbA. At 0:31, they can be seen talking to each other on the premises of D&J Export.

33. D & J Export, Inc. and American Premium Rags Inc. share a singular online presence, pacausa.com, the "contact" information section of this website says, "Ask for Jay or Danny," which, upon information and belief, are the nicknames for Jaime Sanchez and Danny Salmeron.

34. D & J Export, Inc. and American Premium Rags Inc. interchange and share employees. Upon information and belief, Soriano and other employees who worked at D&J Export worked for both corporations.

35. In or about January 2017, Sanchez and Salmeron held a meeting with all employees during which they told them that D & J Export would be splitting into two corporations and they would be compensated for some of their hours worked by D&J Export, Inc., owned by Salmeron, and for the rest of their hours worked by American Premium Rags Inc., owned by Sanchez.

36. In or about January 2017, two clocks were installed at D&J Export.

37. At the January 2017 meeting, employees were instructed to clock in at 8:00 a.m. on the D&J Export, Inc. clock, clock out at 12:30 p.m. for a break, and, upon their return from the break, clock back in on the American Premium Rags Inc. clock. They would then clock out for the day using the American Premium Rags Inc. clock.

38. Accordingly, at the January 2017 meeting, employees were informed that D & J Export, Inc. would pay for their morning hours worked and American Premium Rags Inc. would pay for their afternoon hours worked.

39. The merchandise that D & J Export, Inc. and American Premium Rags Inc. employees worked with was the same. For example, on more than one occasion, and as part of her job duties, Soriano would begin her workday by filling a box with second-hand clothing she had sorted in the morning, then clock out of the D & J Export, Inc. clock at lunch. Upon her return from lunch, she would clock back in on the American Premium Rags Inc. clock and would continue to work on the same box.

40. Throughout Soriano's employment, including after the January 2017 meeting, both Sanchez and Salmeron were present at D&J Export for the entire day directing employees' work duties.

6

## PLAINTIFF'S FACTUAL ALLEGATIONS

41. On its website, D&J Export states that is has over thirty years of used clothing exporting experience and describes itself as "world famous" exporter to "Africa, Asia, Central America, South America, Europe & Worldwide."

42. While working for D&J Export, Soriano sorted and packed new and second-hand clothing.

43. D&J Export's hours of operation are Monday through Friday, from 8:00 a.m. to 5:00 p.m., and Saturday from 8:00 a.m. to 2:30 p.m.

44. Throughout her employment at D&J Export, Soriano worked a regular schedule of Monday through Saturday, from approximately 8:00 a.m. until she was dismissed, which was at or about 4:30 p.m. on weekdays and at or about 2:30 p.m. on Saturdays.

45. Despite these weekly variations, Soriano and other warehouse workers regularly worked over forty hours per workweek.

46. For example, according to her pay stubs, on the weeks of January 13, 20, and 26, 2017, Soriano worked a total of 48.25, 45, and 40.5 hours, respectively.

47. Starting in or about January 2017, Defendants paid Soriano at a straight time rate of $11.00 per hour for all hours worked, including those over forty per workweek.

48. From approximately January 2017 through the end of her employment on September 8, 2017, Defendants paid Soriano for hours worked in the morning by a check and corresponding pay stub issued by D&J Export, Inc. and for hours worked in the afternoon by a check and corresponding pay stub issued by American Premium Rags Inc.

49. Starting in January 2017, other warehouse workers were also paid with two weekly paychecks, each issued by one of the corporations: D&J Export, Inc. for hours worked in the morning and American Premium Rags Inc. for hours worked in the afternoon.

50. Since January 2017, Defendants have failed to pay Soriano and other warehouse workers overtime wages of one and one-half their regular hourly wage rates for hours worked over forty in a workweek.

51. Starting in January 2017, Defendants failed to provide Soriano and other warehouse workers with accurate wage statements at the end of every pay period.

52. Defendants did not, at the time of hiring or whenever their rates of pay changed, provide Soriano and other warehouse workers with notices informing them of, *inter alia*, their rates of pay.

## COLLECTIVE ACTION ALLEGATIONS

53. The claims in this Complaint arising out of the FLSA are brought by Soriano on behalf of herself and similarly situated persons (*i.e.*, clothing sorters and packers, and other non-exempt warehouse workers) ("Warehouse Workers") who were employed by D&J Export since at least January 2017 and who elect to opt into this action (the "FLSA Collective").

54. The FLSA Collective consists of approximately seventy similarly situated current and former Warehouse Workers, who have been victims of Defendants' common policy and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime wages and other pay.

55. As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Soriano and the FLSA Collective by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and

8

pattern or practice includes, *inter alia,* willfully failing to pay employees all overtime wages due for all hours worked in excess of forty hours per workweek since January 2017.

56. Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation.

57. Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant damages to Soriano and the FLSA Collective.

58. Soriano and the FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to D&J Export, are readily identifiable, and locatable through D&J Export's records. These similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

59. The claims in this Complaint arising out of the NYLL are brought by Soriano under Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and a class consisting of all similarly situated non-exempt employees ("Warehouse Workers), who work or have worked at D&J Export since at least January 2017 (the "Rule 23 Class").

60. The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

61. The size of the Rule 23 Class is at least seventy individuals, although the precise number of such employees is unknown. Facts supporting the calculation of that number are presently within the sole control of Defendants.

9

62. Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

63. Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually including, *inter alia*, the following:

   a. whether Defendants violated NYLL Article 6, § 190, *et seq.*, and Article 19, § 650, *et seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 142, as alleged herein;

   b. whether Defendants failed to pay non-exempt employees at the overtime rate for all time worked in excess of forty hours per week;

   c. whether Defendants failed to provide non-exempt employees with accurate wage statements as required by the NYLL and WTPA;

   d. whether Defendants failed to furnish the New York Rule 23 Class with wage notices; and

   e. the nature and the extent of the class-wide injury and the measure of damages for those injuries.

64. Soriano's claims are typical of the claims of the Rule 23 Class she seeks to represent. Soriano and the members of the Rule 23 Class work or have worked for Defendants since at least January 2017. They enjoy the same statutory rights under the NYLL to be paid at the overtime rate for all hours worked over forty in a workweek. Soriano and the members of the Rule 23 Class have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

65. Soriano and the Rule 23 Class have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct.

66. Soriano will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

67. Soriano has retained legal counsel competent and experienced in wage and hour litigation and class action litigation.

68. There is no conflict between Soriano and the Rule 23 Class members.

69. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common policies, practices, and procedures. Although the relative damages suffered by the individual class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. Individual plaintiffs lack the financial resources necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

70. This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## FIRST CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

71. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

72. Defendants are required to pay Plaintiff and the FLSA Collective one and one-half (1½) times their regular hourly rate of pay for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207 *et seq.*

73. Defendants have failed to pay Plaintiff and the FLSA Collective the overtime wages to which they are entitled under the FLSA.

74. Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff and the FLSA Collective overtime wages.

75. Due to Defendants' violations of the FLSA, Plaintiff and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

## SECOND CLAIM
### (New York Labor Law – Unpaid Overtime)

76. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

77. Under the NYLL and supporting New York Department of Labor ("NY DOL") regulations, Defendants were required to pay Plaintiff and the Rule 23 Class one and one-half (1½) times their regular rates of pay for all hours they worked in excess of forty.

78. Defendants have failed to pay Plaintiff and the Rule 23 Class the overtime wages to which they are entitled under the NYLL.

79. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff and the Rule 23 Class overtime wages.

80. Due to Defendants' willful violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

## THIRD CLAIM
### (NYLL Wage Theft Prevention Act – Failure to Provide Wage Notices)

81. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

82. The NYLL and WTPA, as well as the NY DOL regulations, such as but not limited to 12 N.Y.C.R.R. Part 142, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

83. In violation of NYLL § 195(1), Defendants failed to furnish Plaintiff and the Rule 23 Class at the time of hiring, and whenever there was a change to rates of pay with wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law, in violation of the NYLL § 195(1).

84. Due to Defendants' violation of NYLL § 195(1), Plaintiff and the Rule 23 Class are entitled to recover from Defendants liquidated damages of $50 per workday that the violation occurred or persisted, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

## FOURTH CLAIM
### (NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements)

85. Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

86. The NYLL and WTPA require employers to provide employees with an accurate wage statement each time they are paid.

87. Starting in January 2017, Defendants paid Plaintiff and the Rule 23 Class without providing a wage statement at the end of every pay period accurately listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages, in violation of the NYLL § 195(3).

88. Due to Defendants' violation of NYLL § 195(3), Plaintiff and the Rule 23 Class are entitled to recover from Defendants liquidated damages of $250 per workday that the violation occurred or persisted, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, the FLSA Collective, and the Rule 23 Class respectfully requests that this Court enter a judgment:

    a. certifying this case as a class action pursuant to Rule 23 for the class of employees described herein, certification of Plaintiff as the class representative, and designation of Plaintiff's counsel as Class Counsel;

    b. authorizing the issuance of notice at the earliest possible time to all Warehouse Workers who were employed by Defendants during the three years immediately preceding the filing of this action.  This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit;

    c. declaring that Defendants have violated the overtime provisions of the FLSA, the NYLL, and NY DOL regulations;

    d. declaring that Defendants' violations of the FLSA and NYLL were willful;

    e. awarding Plaintiff, the FLSA Collective, and the Rule 23 Class damages for unpaid overtime wages;

    f. awarding Plaintiff and the Rule 23 Class statutory damages as a result of Defendants' failure to furnish a notice at the time of hiring or whenever there was a change in their rates of pay, in violation of the NYLL and WTPA;

    g. awarding Plaintiff and the Rule 23 Class statutory damages as a result of Defendants' failure to furnish to furnish accurate wage statements at the end of each pay period, in violation of the NYLL and WTPA;

    j. awarding Plaintiff, the FLSA Collective, and the Rule 23 Class liquidated damages pursuant to the FLSA and the NYLL;

    k. awarding Plaintiff and the Rule 23 Class pre- and post-judgment interest under NYLL;

l.       awarding Plaintiff, the FLSA Collective, and the Rule 23 Class reasonable attorneys' fees and costs pursuant the FLSA and the NYLL; and

m.      awarding such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         January 11, 2018

PECHMAN LAW GROUP PLLC

By: _____
Louis Pechman
Gianfranco Cuadra
Catalina Cadavid
488 Madison Avenue, 17th floor
New York, New York 10022
pechman@pechmanlaw.com
cuadra@pechmanlaw.com
cadavid@pechmanlaw.com
(212) 583-9500
*Attorneys for Plaintiff and the Putative FLSA Collective, & the Rule 23 Class*