UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

REINA SORIANO, on behalf of herself and all
others similarly situated,

                        Plaintiff,

          -against-

D&J EXPORT, INC. d/b/a D&J EXPORT, INC.,
AMERICAN PREMIUM RAGS INC. d/b/a D&J
EXPORT, INC., JAIME SANCHEZ, and DANNY
SALMERON,

                     Defendants.

-------------------------------------------------------------------- X

**18 Civ. 194 (RLM)**

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

---

PECHMAN LAW GROUP PLLC
Louis Pechman, Esq.
Gianfranco J. Cuadra, Esq.
Catalina Cadavid, Esq.
488 Madison Avenue, 17th Floor
New York, New York 10022
pechman@pechmanlaw.com
cuadra@pechmanlaw.com
cadavid@pechmanlaw.com
Tel.: (212) 583-9500

*Attorneys for Plaintiff, the Putative Rule 23
Class, and the Putative FLSA Collective Action*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii-iv

PRELIMINARY STATEMENT .......................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ......................................... 1

I.    FACTUAL AND PROCEDURAL BACKGROUND ................................................ 1

II.   NOTICE MATERIALS AND THEIR DISSEMINATION.......................................... 2

III.  SUMMARY OF PRIMARY SETTLEMENT TERMS ............................................. 4

ARGUMENT ............................................................................................... 6

I.    ALL CLASS CERTIFICATION REQUIREMENTS OF RULE 23 ARE MET SETTLEMENT
PURPOSES ........................................................................................ 6

II.   THE CLASS ACTION SETTLEMENT IS PROCEDURALLY AND SUBSTANTIVELY FAIR ......... 6

  A.  The Settlement Is the Result of Arm's Length Negotiations Between
Experienced Counsel ..........................................................................7

  B.  The Settlement Is Substantively Fair and Reasonable ................................9

      1.   Complexity, Cost, and Duration of Action ........................................ 9

      2.   Reaction of Class to Settlement ..................................................... 10

      3.   Stage of Proceedings and Discovery Completed ............................... 11

      4.   Liability / Damages & Maintaining Action Through Trial ............................ 11

      5.   Ability of Defendants to Withstand a Greater Judgment ..................... 12

      6.   Reasonableness of Settlement Fund vs. Possible Recovery ........................... 13

III.  THE NOTICE MATERIALS WERE ADEQUATE AND SATISFIED DUE PROCESS ................. 14

IV.  THE COURT SHOULD APPROVE THE FLSA COLLECTIVE ACTION SETTLEMENT ........... 14

V.   THE PROPOSED SERVICE AWARD IS FAIR AND REASONABLE ......................... 16

VI.  THE PROPOSED CLASS COUNSEL FEES AND COSTS ARE FAIR AND REASONABLE ......... 17

  A.  Class Counsel's Fee Request Should Be Granted ......................................17

  B.  Class Counsel's Costs Should Be Reimbursed..........................................20

CONCLUSION...........................................................................................22

## TABLE OF AUTHORITIES

<u>Cases</u>

*Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036 (HBP), 2014 WL 7495092, at *1 (S.D.N.Y. Dec. 29, 2014) ................................................................13

*Caballero v. Senior Health Partners, Inc.*, No. 18 Civ. 02380 (CLP), 2018 WL 6435900, at *1 (E.D.N.Y. Dec. 7, 2018) ...........................................................9, 19

*Cabrera v. Schafer*, No. 12 Civ. 6323 (ADS)(AKT), 2017 WL 9512409, at *1 (E.D.N.Y. Feb. 17, 2017) ...................................................................................21

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) ........................................15

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ....................................9, 13

*Corte v. Fig & Olive Founders LLC*, No. 14 Civ. 7186 (KPF), 2015 WL 12591677, at *1 (S.D.N.Y. June 24, 2015) ...........................................................................7

*Cortes v. New Creators, Inc.*, No. 15 Civ. 5680 (PAE), 2016 WL 3455383, at *1 (S.D.N.Y. June 20, 2016) .....................................................................................10

*Donnelly v. Peter Luger of Long Island, Inc.*, No. 13 Civ. 1377 (LDW)(ETB), 2014 WL 12769046, at *1 (E.D.N.Y. Nov. 13, 2014) ....................................9, 10, 19, 20

*Flores v. Anjost Corp.*, No. 11 Civ. 1531 (AT), 2014 WL 321831, at *1 (S.D.N.Y. Jan. 29, 2014) ............................................................................................. passim

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ........................................16

*Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000) ...........................................18, 19

*Gonqueh v. Leros Point to Point, Inc.*, No. 14 Civ. 5883 (GWG), 2016 WL 791295, at *1 (S.D.N.Y. Feb. 26, 2016) .............................................................................16

*Granada Investment, Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) ...............................12

*Hall v. ProSource Technolgies, LLC*, No. 14 Civ. 2502 (SIL), 2016 WL 1555128, at *1 (E.D.N.Y. April 11, 2016) .............................................................................15

*Hernandez v. Anjost Corp.*, No. 11 Civ. 1531, 2013 WL 4145952, at *1 (S.D.N.Y. Aug. 14, 2013) ............................................................................................. 8

*Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071, 2005 WL 2757792, at *1 (S.D.N.Y. Oct. 24, 2005) ..................................................................................7

*Houston v. Cotter*, 234 F. Supp. 3d 392 (E.D.N.Y. 2017) ...........................................................21

ii

*In re Austrian & German Bank Holocaust Litigation*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ..................................................................................................................13

*In re Gache*, 164 F.3d 617 (2d Cir. 1998)........................................................................13

*In re Telik, Inc. Securities Litigation*, 576 F. Supp. 2d 570 (2d Cir. 2008) ................18

*In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (2d Cir. 2004).................11

*Karic v Major Automotive Cos.*, 799 F. Supp. 2d 219 (E.D.N.Y. 2011) .....................15

*Karic v. Major Automotive Cos.*, No. 09 Civ. 5708 (CLP), 2016 WL 1745037, at *1 (E.D.N.Y. April 27, 2016)............................................................................ passim

*Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169 (S.D.N.Y. May 29, 2014)....................14

*Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362 (S.D.N.Y. 2013) .................10

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1995)..................6

*McKenna v. Champion International Corp.*, 747 F.2d 1211 (8th Cir. 1984) ..............15

*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012)...............17

*Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597 (D. Colo. 1974)..............................12

*Saldana v. Middletown Car-G-Cam Uni Corp.*, No. 15 Civ. 3651 (NSR), 2015 WL 12591678, at *1 (S.D.N.Y. Sept. 23, 2015) ........................................................6

*Sandoval v. Philippe North American Restaurants, LLC*, No. 16 Civ. 615, 2018 WL 1635034, at *1 (S.D.N.Y. April 4, 2018) ................................................................7

*Sierra v. Spring Scaffolding LLC*, No. 12 Civ. 5160 (JMA), 2015 WL 10912856, at *1 (E.D.N.Y. Sept. 30, 2015)......................................................................... passim

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003)..........................................12

*Surdu v. Madison Global, LLC*, No. 15 Civ. 6567 (HBP), 2018 WL 1474379, at *1 (S.D.N.Y. Mar. 23, 2018) ....................................................................................15

*Torres v. Gristedes Operating Corp.*, No. 08 Civ. 9627, 2010 WL 2572937, at *1 (S.D.N.Y. June 1, 2010)...........................................................................................7

*Yim v. Carey Limousine NY, Inc.*, No. 14 Civ. 5883 (WFK)(JO), 2016 WL 1389598, at *1 (E.D.N.Y. April 7, 2016) ...............................................................................7

*Zeltser v. Merril Lynch & Co.*, No. 13 Civ. 1531, 2014 WL 2111693, at *1 (S.D.N.Y. May 12, 2014).........................................................................................8

*Zeltser v. Merrill Lynch & Co., Inc.*, No. 13 Civ. 1531, 2014 WL 4816134, at *1
(S.D.N.Y. Sept. 23, 2014) ........................................................................10, 17, 20


Rule

Fed. R. Civ. P. 23 ..................................................................................................6

## PRELIMINARY STATEMENT

By this unopposed Motion, Plaintiff Reina Soriano ("Plaintiff" or "Soriano"), on behalf of herself and all others similarly situated, respectfully requests that the Court grant final approval of the Parties' Joint Stipulation of Class and Collective Action Settlement and Release (the "Stipulation"),[1] which the Court preliminarily approved on February 4, 2019. ECF No. 40. For the reasons explained in detail below, as well as those set forth in the Pechman Declaration, the Court should approve the settlement as a fair, reasonable, and adequate resolution of bona fide disputes that was reached following arm's length negotiations between experienced attorneys with the assistance of the Court.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Soriano respectfully refers the Court to her Unopposed Motion for Preliminary Approval and supporting documents, ECF Nos. 37–38, and to the Pechman Declaration for a full recitation of the factual and procedural history of the Action. For the Court's convenience, the facts and procedure most relevant to this motion are summarized below.

### I.    Factual and Procedural Background

On January 11, 2018, Soriano commenced this putative class and collective action on behalf of herself and all similarly situated hourly-paid clothing packers, sorters, and loaders who worked for Defendants at D&J Export in 2017 (the "Class Members"). Pechman Decl. ¶ 9. Plaintiff claimed that beginning in January 2017, D&J Export paid each Class Member's weekly wages under two paychecks. *Id.* ¶ 10. Each paycheck's accompanying wage statement (a.k.a. paystub) reflected a regular hourly rate of $11.00

---

[1]    Unless otherwise defined, capitalized terms and abbreviations used in this memorandum of law are defined in the Stipulation, enclosed to the Declaration of Louis Pechman ("Pechman Decl.") as Exhibit 1, and in the Pechman Declaration. All exhibits to the Pechman Declaration are referenced here by the prefix "Ex." and a number (*e.g.*, "Ex. 1" is the Stipulation). Exhibits to the Stipulation are referenced by "Ex." and their designated letter (*e.g.*, "Ex. A" refers to the CAFA Notice).

and fewer than forty hours worked, even though Class Members regularly worked more than forty hours per workweek. *Id.* Plaintiff claimed Defendants' common policy or practice at D&J Export robbed her and all Class Members of their overtime wages. *Id.* Plaintiff also claimed Defendants did not provide Class Members with wage notices within ten business days of hiring reflecting, *inter alia*, their regular and overtime wage rates. *Id.* Defendants generally denied Plaintiff's allegations in their Answer. *Id.* ¶ 12.

Between June and August 2018, Defendants produced over 4,200 pages of payroll records for all Class Members. *Id.* ¶¶ 17–18. On August 15, 2018, the Parties attended a 2.5-hour-long settlement conference before this Court. *Id.* ¶ 19. At the conference, Defendants shared financial information with the Court proving they could not withstand a significant judgment. *Id.* The conference ended with the Court proposing a settlement for $115,000.00, which the Parties accepted on August 29, 2018. *Id.* ¶¶ 20–21. Soon afterwards, the Parties realized the settlement failed to account for all Class Members. *Id.* ¶ 22. Between August and mid-October 2018, Defendants produced 600 more pages of payroll records, Class Counsel re-calculated class-wide damages, and the Parties re-negotiated the settlement amount. *Id.* On October 25, 2018, the Parties informed the Court they had settled this matter for $137,500 (the "Settlement Payment"). *Id.*

## II.    Notice Materials and Their Dissemination

The Court preliminarily approved the Parties' settlement on February 4, 2019 (the "Preliminary Approval Order"). *Id.* ¶ 35. By March 6, 2019, Defendants provided Class Counsel, as Claims Administrator, with a list reflecting all contact information they possessed for Class Members, including mailing addresses and telephone numbers. *Id.* ¶ 40. Defendants' list did not include contact information, only names, for seven Class Members, and it included only telephone numbers for eleven other Class Members. *Id.* In other words, there was no mailing information provided for eighteen Class Members.

2

*Id.* After removing duplicative information from Defendants' list and the Settlement Shares list previously shared with the Court (ECF No. 37–8), the Claims Administrator concluded there were 102 class members.[2] *Id.* ¶ 41.

Per the Stipulation, the Class Counsel mailed the Notice Materials in English and Spanish to eighty-four Class Members on March 6, 2019, within thirty days of the Preliminary Approval Order. *See* Ex. 1 §§ II(28), VIII(1)(b); Pechman Decl. ¶ 42. The Notice Materials reflected each Class Member's estimated Settlement Share and explained how it was calculated; Class Member's rights and how to exercise them (*e.g.*, exclusion and objection); Class Members' right to be represented by PLG or to retain another attorney; Class Members' rights under the NYLL and WTPA, and that those rights will be released by doing nothing; Class Members' rights under the FLSA, and that those rights will be released by cashing / depositing a Settlement Check; the nature of the Action, including Defendants' defenses; and that Class Members may contact Class Counsel, not the Court, with questions. *See generally* Ex. C ¶¶ 1–3, 5–7, 9–11; *see also* Pechman Decl. ¶¶ 43–47.

Soon after the initial mailing, Class Counsel and Soriano attempted to locate the eighteen missing Class Members. Pechman Decl. ¶ 48. On different occasions, Class Counsel called the eleven Class Members for whom it had telephone numbers. *Id.* Four of the telephone numbers were out of service or incorrect, and the rest of the Class Members did not call back. *Id.* Working with Soriano, Class Counsel located addresses for two more Class Members, to whom it mailed Notice Materials on April 16, 2019. *Id.*

---

[2]    The following are duplicates:  (a) Juana M. Rodriguez is Juana Rodriguez; (b) Marta Senaida Rosales is Marta Rosales; and (c) Sandra C. Gonzalez is Sandra Cubias. *See* ECF No. 37–8. There are 102 Class Members after removing the duplicates. Pechman Decl. ¶ 41; Ex. 2. Working with Soriano, the Claims Administrator located an additional Class Member on March 6, 2019, who had been inadvertently left out of the settlement, bringing the total number of Class Members to 103. Pechman Decl. ¶ 51.

¶ 49.  Class Counsel unsuccessfully attempted to find contact information for the other sixteen Class Members by contacting Soriano and other Class Members who worked during the same periods as those Class Members, and, in some cases, conducting Facebook searches.  *Id.* ¶ 50.  Facebook searches were unsuccessful, and neither Soriano nor the other Class Members were able to locate the missing Class Members.  *Id.*

On March 6, 2019, Soriano helped Class Counsel locate Rosa Olivia, a Class Member who was not included in Defendants' list and for whom payroll records had not been produced.  *Id.* ¶ 51.  Defendants produced records for Olivia, and Class Counsel calculated her damages and estimated Settlement Share.  *Id.* ¶¶ 52–53.  Class Counsel mailed Olivia her Notice Materials on April 6, 2019.  *Id.* ¶ 56.  On or about March 11, 2019, Class Counsel also discovered that payroll records provided for Juan Carlos Rodriguez were incomplete, and his Settlement Share should have been greater.  *Id.* ¶¶ 52–53.  In good faith, Defendants agreed to pay the two Class Members' Settlement Shares separately from the QSF to avoid reducing the estimated Settlement Shares that had already been mailed to Class Members in their Notice Materials.  *Id.* ¶ 55; Ex. 3.

Of the eighty-four initial mailings, ten were returned as undeliverable.  Pechman Decl. ¶ 57.  Class Counsel successfully re-mailed four of the mailings to new addresses. *Id.*  In total, for the 103 Class Members, eighty-one mailings were successful.  *Id.* ¶ 58.  No Class Member has opted-out of or objected to the Settlement.  *Id.* ¶ 59.  Since March 2019, approximately ten Class Members have called PLG about the settlement.  *Id.* ¶ 60.  All callers expressed approval of the settlement terms.  *Id.*

## III.    Summary of Primary Settlement Terms

The primary settlement terms, summarized from Plaintiff's prior motion, are:

- **Settlement Payment**:  Defendants shall pay $137,500.00 into a Qualified Settlement Fund, or QSF (*i.e.*, a bank account), within five business days of the

Court's Final Approval Order becoming final, as set forth in the Stipulation. Ex. 1 §§ II(22), (35), (39), XIV(1). To preserve resources, Class Counsel is serving as Claims Administrator. *Id.* §§ II(6), VI(1).

- **Claims Administrator**: As Claims Administrator, Class Counsel has, *inter alia*, mailed Notice Materials to Class Members; worked with the Class Representative to identify Class Members' addresses whose mailings are returned as undeliverable; and communicated with Class Members. *Id.* § VI(1). Following final approval of the Settlement, the Claims Administrator will ensure Defendants pay the Settlement Payment and set up the QSF as required by the Stipulation; work with Defendants to monitor the cashing of Settlement Checks by Claimants; and handle all communications with Class Members. *Id.*

- **Payments to Counsel**: Of the QSF, Class Counsel shall be paid its attorneys' fees, $45,833.33 (33.33% of the QSF), plus $633.70 in costs incurred in the prosecution of the Action and the administration of the Settlement. *Id.* § XI.

- **Service Award & Soriano's Release**: For her contributions to and participation in the Action, including her aid to the Claims Administrator, Soriano is to be paid up to $2,000.00 from the QSF as a Class Representative Payment. *Id.* § XVIII(1). Soriano alone, not the Class Members, releases all of her possible claims against Defendants in exchange for her eligibility for this service award. *Id.* § XVIII(1).

- **Net QSF & Settlement Shares**: The "Net QSF" is the $89,032.97 remaining in the QSF after subtracting the Class Representative Payment and attorneys' fees and costs. *See id.* XV(1), Ex. F at 3. Class Counsel has calculated the exact Settlement Share of each Class Member after all costs in the Action were assessed. *See* Ex. F. Each Class Member's Settlement Share equals his or her percentage of the sum of all unpaid overtime wages for all Class Members multiplied by the Net QSF. *See* Ex. 1 § II(40), Ex. F. For example, Soriano's unpaid overtime wages are $750.75. Ex. F at 1. Her percentage of damages, 1.356375%, equals $750.75 divided by $55,349.73, the sum of all Class Member's unpaid overtime wages. *Id.* Accordingly, Soriano's Settlement Share is $1,207.62, equal to 1.356375% multiplied by $89,032.97. *Id.*

- **NYLL Release**: All Class Members are "Settlement Class Members," because they neither objected to nor opted out of the Rule 23 Class. Ex. 1 § II(32); ECF No. 39. They and Soriano will receive a Settlement Check. Ex. 1 § XVIII(2). In exchange for receiving a Settlement Check, Soriano and all Settlement Class Members release Releasees from all wage-and-hour claims, including for unpaid wages, liquidated and statutory damages, interest, and attorneys' fees and costs, under the NYLL and WTPA that were pled or could have been pled in the Action. *Id.*

- **FLSA Release**: All Settlement Checks will contain a statement next to the signature line, in bold type-face, stating Settlement Class Members who sign and cash their checks become Claimants and, as such, release their wage-and-hour claims against Releasees for unpaid wages, liquidated damages, and attorneys' fees under the FLSA. *Id.* §§ XVI(5), XVIII(3). To prevent fraud, checks will also

5

state in bold type-face that "**only the recipient to whom this check is written may deposit and/or cash this check.  This check is non-transferable.**"  *Id.* § XVI(6).

- **Reversion & Taxes**:  Settlement Class Members have 120 days from the date Settlement Checks are mailed to deposit/cash them.  *Id.* § XV(6).  Checks not deposited/cashed as of the 121st day after the mailing will be void and their proceeds will revert back to Defendants.  *Id.* § XV(6); Ex. C ¶ 3.  Payments under the Settlement will be made under IRS Tax Form 1099.  Ex. C ¶ 3; Ex. 1 § XV(4).

## ARGUMENT

### I.    All Class Certification Requirements of Rule 23 Are Met Settlement Purposes

Soriano respectfully refers the Court to her unopposed preliminary settlement approval motion, which explains in detail that all class action certification requirements of Rules 23(a) and (b) are met here for settlement purposes.  *See generally* ECF No. 38 at 7–14.  That motion further explains that appointment of Plaintiff as Class Representative and PLG as Class Counsel is proper.  *Id.* at 14–15.

### II.    The Class Action Settlement Is Procedurally and Substantively Fair

Having preliminarily approved the Parties' class action settlement (ECF No. 40), the Court must now determine whether the proposed settlement is substantively and procedurally "fair, adequate, and reasonable and not the product of collusion."  *See, e.g.*, Fed. R. Civ. P. 23(e); *Karic v. Major Automotive Cos.*, No. 09 Civ. 5708 (CLP), 2016 WL 1745037, at *4 (E.D.N.Y. April 27, 2016).

Although approval of a class action settlement is subject to the district court's discretion, the Court must be mindful that "policy favors the settlement and compromise of class actions."  *Karic*, 2016 WL 1745037, at *4; *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995); *Saldana v. Middletown Car-G-Cam Uni Corp.*, No. 15 Civ. 3651 (NSR), 2015 WL 12591678, at *1 (S.D.N.Y. Sept. 23, 2015) ("The law favors compromise and settlement of class actions.").  Courts should give "proper deference to the private

6

consensual decision of the parties." *Torres v. Gristedes Operating Corp.*, No. 08 Civ. 9627, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010). The "parties and their counsel are in a unique position to assess the potential risks of litigation, and thus district courts in exercising their discretion often give weight to the fact that the parties have chosen to settle." *Sandoval v. Philippe N. Am. Rests., LLC*, No. 16 Civ. 615, 2018 WL 1635034, at *2 (S.D.N.Y. April 4, 2018). "[W]hen evaluating a settlement agreement, the court is not to substitute its judgment for that of the Parties, nor is it to turn consideration of the adequacy of the settlement 'into a trial or a rehearsal of the trial.'" *Yim v. Carey Limousine NY, Inc.*, No. 14 Civ. 5883 (WFK)(JO), 2016 WL 1389598, at *6 (E.D.N.Y. April 7, 2016).

Here, the Settlement is procedurally and substantively fair, adequate, reasonable, and the product of arm's-length negotiations between experienced counsel.

## A.    The Settlement Is the Result of Arm's Length Negotiations Between Experienced Counsel

In deciding whether to approve a class settlement, courts assess its fairness by analyzing the negotiations that led to it. *Wal-Mart Stores, Inc.*, 396 F.3d at 116. A presumption of fairness arises where a settlement was "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (internal quotation omitted). "A settlement like this one, reached with the help of a third-party neutral, enjoys a 'presumption that the settlement achieved meets the requirements of due process.'" *Corte v. Fig & Olive Founders LLC*, No. 14 Civ. 7186 (KPF), 2015 WL 12591677, at *2 (S.D.N.Y. June 24, 2015) (citation omitted). Factors relevant to determining whether a settlement is procedurally fair include "[t]he experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves[.]" *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071, 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005) (internal quotation omitted).

7

Here, the Parties were represented by counsel experienced in wage-and-hour class actions. Pechman Decl. ¶¶ 64–73. They reached a settlement only after Defendants produced approximately 4,250 pages of payroll records, which Class Counsel analyzed to calculate damages for over 100 class members. *Id.* ¶ 18; Ex. 2. The Parties engaged in extensive and hard-fought arm's length negotiations before, at, and after the settlement conference. Pechman Decl. ¶¶ 18–22. At the conference, following hours of negotiations, the Court proposed a settlement amount when the Parties could not agree on one. *See id.* ¶ 21; *see also See Zeltser v. Merril Lynch & Co.*, No. 13 Civ. 1531, 2014 WL 2111693, at *2 (S.D.N.Y. May 12, 2014) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); *Hernandez v. Anjost Corp.*, No. 11 Civ. 1531, 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a presumption that the settlement achieved meets the requirements of due process.") (internal quotation marks omitted). Despite settling in principle, the Parties continued to negotiate at arm's length even after the settlement conference, when they realized that several Class Members had not been accounted for in the settlement. Pechamn Decl. ¶ 22. Class Counsel re-calculated class-wide damages and re-negotiated the settlement amount with Defendants, resulting in a higher settlement amount than what the Court had proposed. *Id.*

Notably, the Parties continued to negotiate even after Class Counsel mailed the Notice Materials, when it learned Rosa Olivia was inadvertently omitted from the settlement and Juan Carlos Rodriguez's Settlement Share was incorrect. *Id.* ¶¶ 51–55. Using additional payroll records for both Class Members, Class Counsel calculated their damages and negotiated their new Settlement Shares. Pechman Decl. ¶ 55. The Parties negotiated and eventually agreed that Defendants would pay for Olivia's and the

remainder of Rodriguez's Settlement Shares separately to avoid reducing the estimated Settlement Shares communicated to Class Members in their Notice Materials. *Id.* ¶ 55.

The Parties' "extensive negotiations on the terms of the agreement," even after reaching a settlement in principle, prove the settlement is the product of procedural fairness. *See, e.g.*, *Karic*, 2016 WL 1745037, at \*5.

### B.    The Settlement Is Substantively Fair and Reasonable

To determine whether a settlement is substantively fair, reasonable, and adequate, courts in the Second Circuit use the nine-factor test from *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). *See, e.g.*, *Caballero v. Senior Health Partners, Inc.*, No. 18 Civ. 02380 (CLP), 2018 WL 6435900, at \*3 (E.D.N.Y. Dec. 7, 2018); *Karic*, 2016 WL 1745037, at \*4; *Sierra v. Spring Scaffolding LLC*, No. 12 Civ. 5160 (JMA), 2015 WL 10912856, at \*4 (E.D.N.Y. Sept. 30, 2015); *Donnelly v. Peter Luger of Long Island, Inc.*, No. 13 Civ. 1377 (LDW)(ETB), 2014 WL 12769046, at \*3 (E.D.N.Y. Nov. 13, 2014).

Here, all factors support settlement approval.

### 1.    Complexity, Cost, and Duration of Action

The Settlement avoids further litigation, additional discovery (especially depositions), motion practice, trial, and possible appeals, all of which will be significantly expensive. As of today, the Action has been ongoing for 1.5 years. *See* ECF No. 1 (filing date of January 11, 2018). The Parties have already incurred significant expenses litigating the action. This is because "class actions, especially in the context of FLSA claims, are inherently complex." *Karic*, 2016 WL 1745037, at \*5.

If the Action continues, it will take at least another year before class certification and dispositive motions are decided and trial begins, by which time Defendants may file for bankruptcy. *See* Pechman Decl. ¶¶ 19–20 (explaining Defendants provided documents, for settlement purposes, reflecting their precarious financial condition); *see*

*also Zeltser v. Merrill Lynch & Co., Inc.*, No. 13 Civ. 1531, 2014 WL 4816134, at *4 (S.D.N.Y. Sept. 23, 2014) ("Litigation through trial would be complex, expensive and long. Therefore, the first *Grinnell* factor weighs in favor of final approval."). The first factor weighs in favor of approval of the Settlement, especially in light of Defendants' financial difficulties. *See, e.g.*, *Cortes v. New Creators, Inc.*, No. 15 Civ. 5680 (PAE), 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) ("In light of defendants' precarious financial condition . . . there is a substantial risk that any judgment plaintiff[] might obtain at trial would prove uncollectable."); *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("Case law recognizes that potential difficulty in collecting damages militates in favor of finding a settlement reasonable.").

### 2.    Reaction of Class to Settlement

"The reaction of Class Members to the settlement is the most significant factor in considering the fairness of the Settlement Agreement." *Karic*, 2016 WL 1745037, at *5. Here, Class Counsel mailed the Notice Materials in Spanish and English on March 6, 2019, which fully explained to Class Members' rights available, including their rights to opt-out of and object to the proposed settlement. Pechman Decl. ¶¶ 39, 43–47; Ex. C at p. 1 (explaining rights to "exclude yourself," "object," "go to a hearing," or "do nothing"), §§ 5, 7, 9. Class Members could contact Class Counsel, who is fluent in Spanish and English, to ask for more details about the settlement. Ex. C § 10.

The Class Members' response to the proposed settlement has been markedly positive, with nobody opting out of or objecting to the settlement. Pechman Decl. ¶ 59. Approximately ten Class Members who called Class Counsel approved of the settlement. *Id.* ¶ 60. "'The fact that the vast majority of class members neither objected nor opted out is a strong indication' of fairness." *Donelly*, 2014 WL 12769046, at *5; *see also Flores v. Anjost Corp.*, No. 11 Civ. 1531 (AT), 2014 WL 321831, at *5 (S.D.N.Y. Jan. 29, 2014) ("This

favorable response demonstrates that the class approves the settlement and supports final approval.").

### 3.    Stage of Proceedings and Discovery Completed

"The proper question is 'whether counsel had an adequate appreciation of the merits of the case before negotiation.'"  *Sierra*, 2015 WL 10912856, at *5 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (2d Cir. 2004)).  Here, Plaintiff's claims rest exclusively on Defendants' documents.  *See* Pechman Decl. ¶¶ 10–11, 18.  Defendants produced almost 5,000 pages of payroll records for all Class Members.  *Id.* ¶¶ 19, 22, 52.  As in *Sierra*, this factor tips decidedly in favor of settlement approval, because Class Counsel interviewed Soriano and several opt-in plaintiffs "to gather information relevant to the claims in the litigation, obtained, reviewed, and analyzed documents relating to the employment claims of the Plaintiffs; and analyzed time and payroll records from Plaintiffs and Defendants."  *See* 2015 WL 10912856, at *5; Pechman Decl. ¶¶ 19, 22, 52.

The information gathered allowed Class Counsel to calculate damages, down to the penny, for every Class Member and understand the merits of the case.  *See* Ex. 2; Ex. F.  "When discovery has been extensive, and counsel has sufficient information to appreciate the merits of the case, then settlement is favored."  *Karic*, 2016 WL 1745037, at *6 (favoring settlement approval where "thousands of pages of records from defendants" were produced, allowing the parties to "appreciate the merits of the case"); *see also Flores*, 2014 WL 321831, at *5 (finding third *Grinnel* factor in favor of final approval where counsel gathered all information needed to "weigh the strengths and weaknesses of [Class Members'] claims and to accurately estimate the damages at issue.").

### 4.    Liability/Damages & Maintaining Action Through Trial

Although Plaintiff believes she has strong claims, there is a risk that a class may not be fully certified.  Defendants produced Plaintiff's wage notice, given to her when

11

she was hired, and argue Plaintiff lacks standing to pursue a failure to receive wage notices claim under NYLL § 195(1) on behalf of the Class. Defendants further claim that not all of their hourly-paid employees worked overtime hours. As a result, Defendants claim a class may not be manageable through trial, because there will be individualized inquiries about which employees worked overtime hours in 2017. Plaintiff contends that liability and damages are clear (*see, e.g.*, Exs. F, 2), at least with respect to her claims for unpaid overtime wages and failure to receive accurate wage statements.

To avoid the risks inherent in continued litigation, as well as the uncertainty of collective and class action motion practice, the Parties agreed to the Settlement. The possibility that the class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (citation omitted). The proposed Settlement "provides for relief now, not some wholly speculative payment of a hypothetically larger amount years down the road." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 260 (S.D.N.Y. 2003). Under these circumstances, especially the "substantial risk of collection" against Defendants, it is proper for the parties "to take the bird in the hand instead of a prospective flock in the bush." *Flores*, 2014 WL 321831, at *5; *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974). The fourth, fifth, and sixth *Grinnell* factors favor settlement approval.

### 5.    Ability of Defendants to Withstand a Greater Judgment

Defendants are in a precarious financial condition. Pechman Decl. ¶¶ 19–20. This is the main reason the Parties agreed to have Class Counsel serve as Claims Administrator. *Id.* ¶ 29. As is explained in Section 6 *infra*, the Settlement represents a significant recovery for all Class Members, even after payment of the Class Representative Payment and Class Counsel's fees and costs. By agreeing to the Settlement, "defendants have committed to fund the settlement amount, eliminating the

difficulties and risk of collection in the future." *Karic v. Major Automotive Cos.*, No. 9 Civ. 5708, 2015 WL 9433847, at *10 (E.D.N.Y. Dec. 22, 2015), *rep. & rec. adopted by* 2016 WL 323673, at *1. The seventh *Grinnell* factor weighs in favor of settlement approval.

### 6.    Reasonableness of Settlement Fund vs. Possible Recovery

The final two *Grinnell* factors weigh heavily in favor of settlement approval. The Settlement Payment represents a significant recovery even though the Class could perhaps recover more money if Plaintiff were fully successful on all of her claims at trial and through appeal. The determination of whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000); *see also Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036 (HBP), 2014 WL 7495092, at *3 (S.D.N.Y. Dec. 29, 2014) ("The inquiry with respect to this factor is to see whether the settlement falls below the lowest point in the range of reasonableness." (quoting *In re Gache*, 164 F.3d 617 (2d Cir. 1998))). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n. 2.

Here, the Class's highest possible recoveries per category of damages are:

| Unpaid Overtime Wages | Liquidated Damages | Interest (up to 8/29/18) | WTPA Paystubs | WTPA Notices |
|---|---|---|---|---|
| $57,093.78 | $57,093.78 | $6,612.09[3] | $424,820.00 | $296,500.00 |

The Class's highest potential damages are $841,669.65. Ex. 2. Subtracting damages for the disputed WTPA notices claim, the Class's highest possible recovery is $545,199.65, or $538,587.56 excluding NYLL interest. *Id.* Under the FLSA, the Class's highest potential damages are $114,187.56, equal to unpaid overtime wages and liquidated damages. *Id.*

---

[3]    Interest is calculated up to the date the Parties settled in principle. Pechman Decl. ¶ 5.

The Settlement Payment (*i.e.*, $137,500.00) is a reasonable, fair, and adequate amount because of the manageability concerns noted and, most importantly, Defendants' inability to withstand a higher payment. *See supra* § II.B.4–5. At $137,500.00, the Settlement Payment exceeds the Class Members' highest possible recovery for unpaid overtime wages, liquidated damages, and interest (*i.e.*, $120,349.65). Even after deducting attorneys' fees and costs and the Class Representative Payment, each Class Member will receive approximately 160% of his or her unpaid overtime wages. *See* Ex. F. That is, they will receive all of their alleged unpaid overtime wages plus 60% of their highest possible liquidated damages. *See id.* In light of Defendants' financial difficulties, the Settlement Payment represents more than a "meaningful benefit" to the Class Members and should be approved, especially because Courts have approved settlement funds amounting to less than all alleged unpaid wages. *See, e.g.*, *Karic*, 2016 WL 1745037, at *7; *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 180 (S.D.N.Y. May 29, 2014) ("An award of $315,000 appears fair, reasonable and adequate because even after attorneys' fees, service awards, and administrative costs, plaintiffs would receive *nearly* all of their actual damages.") (emphasis added). Therefore, the last two *Grinnell* factors favor settlement approval.

## III.    The Notice Materials Were Adequate and Satisfied Due Process

Class Counsel sent the Notice Materials in English and Spanish by first class mail to all Class Members for whom it had addresses. Pechman Decl. ¶¶ 39, 42–43. As the Court found in the Preliminary Approval Order, the Notice Materials were adequate and satisfied due process requirements. ECF No. 40 at 2. This was the "best notice practicable under the circumstances." *Sierra*, 2015 WL 10912856, at *5.

## IV.    The Court Should Approve the FLSA Collective Action Settlement

"A settlement of in an FLSA collective action is not effective unless it is approved by either a district court or the United States Department of Labor." *Surdu v. Madison*

14

*Global, LLC*, No. 15 Civ. 6567 (HBP), 2018 WL 1474379, at \*6 (S.D.N.Y. Mar. 23, 2018)
(citing *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015)).  If the
*Grinnell* factors are met, the standards for settlement approval under the FLSA will
"necessarily" also be satisfied.  *Id.*; *see also Hall v. ProSource Techs, LLC*, No. 14 Civ. 2502
(SIL), 2016 WL 1555128, at \*9 (E.D.N.Y. April 11, 2016) (approving FLSA collective action
settlement after removal of non-disclosure clause).  "The burden [for FLSA settlement
approval] is significantly less than that required to sustain a class certification motion
under Rule 23 because the FLSA's opt-in provision merely provides an opportunity for
potential Plaintiffs to join the action and is only a preliminary determination as to which
potential Plaintiffs may in fact be similarly situated." *Karic v Major Automotive Cos.*, 799 F.
Supp. 2d 219, 224 (E.D.N.Y. 2011); *see also McKenna v. Champion Int'l Corp.*, 747 F.2d 1211,
1213 (8th Cir. 1984) (reasoning FLSA actions do not implicate due process concerns as do
Rule 23 class actions because "[p]arties may elect to opt in but a failure to do so does not
prevent them from bringing their own suits at a later date").

For the reasons discussed above, *supra* Section II, and in the Preliminary Settlement
Approval Motion (ECF Nos. 37–38), the FLSA settlement should be approved.  Class
Counsel calculated individualized damages for every Class Member.  *See, e.g.*, Ex. 2 at 5
(sample damages for Class Member Carla Mencias); Pechman Decl. ¶ 5.  As noted, *supra*
§ II.A., this Settlement was the result of extensive arm's-length negotiations between
experienced counsel.  As part of this Settlement, each Class Member will receive his or
her full back wages alleged and 60% of his or her liquidated damages.  *See generally* Ex. 2.

The Notice Materials informed Class Members in Spanish and English that they
had the opportunity to object or otherwise opt-out of the settlement, attend the Fairness
Hearing, and that their FLSA rights will be released only if they cash their check.  *See
generally* Ex. C. §§ 5 (explaining waiver of NYLL claims by doing nothing), 6 ("[Y]ou will

not release any claims under the federal law (*i.e.*, the FLSA) unless you become a Claimant by cashing and/or depositing your Settlement check within 120 days of its mailing to you."), 7 (exclusion process), 8 ("You are not required or expected to attend the Fairness Hearing.  However, you are welcome to attend at your own expense."), 9 (explaining objection process), 10 (explaining that more details are available by contacting Class Counsel).  No Class Member has objected to or otherwise chosen to be excluded from the settlement.  Pechman Decl. ¶ 59.  Class Members who wish to sue Defendants under the FLSA can simply not cash their checks.  Ex. C § 6; *see also Gonqueh v. Leros Point to Point, Inc.*, No. 14 Civ. 5883 (GWG), 2016 WL 791295, at *4–5 (S.D.N.Y. Feb. 26, 2016) (approving hybrid class settlement where class members waived state law rights by not excluding themselves from class and waived FLSA rights by cashing settlement checks received).

## V.     The Proposed Service Award Is Fair and Reasonable

Service awards "are particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).  Plaintiff contributed significantly by starting the Action, analyzing documents, providing her own paystubs to prove her claims, and negotiating at the settlement conference.  Pechman Decl. ¶¶ 81–83.  After the Parties reached a settlement in principle, Soriano helped the Claims Administrator obtain addresses for two of the Class Members and identify Rosa Olivia, a new Class Member.  *Id.* ¶¶ 51, 82.  For her services, and for shouldering the risk of being the only named plaintiff in the Action, the Court should grant Plaintiff a service award of $2,000.00, only 1.45% of the Settlement Payment and significantly less than service awards approved by other courts.  *See, e.g.*, *Karic*, 2016 WL 1745037, at *7–8; *Gonqueh*, 2016 WL 791295, at *3 (approving service awards ranging from

16

5,000.00 to $13,000.00 per plaintiff); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 624 (S.D.N.Y. 2012) (approving service award of $7,500); *Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *9 (S.D.N.Y. May 11, 2010) (approving $10,000.00 service awards as "common in class action cases and . . . important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by coming and continuing as a litigant, and any other burdens sustained by the plaintiff").

## VI.    The Proposed Class Counsel Fees and Costs Are Fair and Reasonable

### A.    Class Counsel's Fee Request Should Be Granted

Per the Stipulation and Class Counsel's retainer with Soriano and other Class Members, Class Counsel requests fees of 33.33% of the QSF, or $45,833.33.  Ex. 1 § XI; Pechman Decl. ¶ 63; *see also Zeltser*, 2014 WL 4816134, at *9 ("Plaintiffs agreed that Class Counsel could apply to the Court for one-third of the class-wide recovery and that they would pay Class Counsel one-third of any individual recovery.").  Class Counsel requests these fees based on the substantial amount of work performed and the significant risk that it undertook in prosecuting the Action purely on a contingency fee basis.  Pechman Decl. ¶¶ 62–63.  If the Action resulted in no recovery, Class Counsel would have recovered no fees and lost its costs incurred.  *See infra* Part IV.B.  To date, Class Counsel has dedicated over 260 hours of attorney time litigating this matter.  Pechman Decl. ¶ 77; Ex. 4.

"The trend in this Circuit is toward the percentage method, which 'directly aligns the interest of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'"  *See Wal-Mart Stores, Inc.*, 396 F.3d at 121; *see also, e.g.*, *Sierra*, 2015 WL 10912856, at *7 ("The Court finds that the amount of fees requested is fair and reasonable using the 'percentage-of-recover' method, which is with

the 'trend in this Circuit.'" (citation omitted)); *Clark*, 2010 WL 1948198, at *9 (approving "fee award of one-third" of fund as "consistent with the Second Circuit's decision in *Arbor Hill*" and *Goldberger* factors and as appropriate because class counsel would "be required to spend time administering the settlement going forward"). "Attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (2d Cir. 2008) (internal quotation omitted). "Fees and expenses are paid from the common fund so that all class members contribute equally towards the costs associated with litigation pursued on their behalf." *Id.* The award of attorneys' fees has the three-fold benefit of: (1) "providing just compensation," (2) "encourag[ing] skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and (3) "discourag[ing] future misconduct of a similar nature." *Id.*

All factors from *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), favor a fee of 33.33% for Class Counsel. First, Class Counsel spent over 250 hours analyzing approximately 5,000 pages of records, negotiating the Settlement, researching the claims, calculating damages, discussing the claims and defenses with Soriano, drafting discovery requests, attending the settlement conference, drafting the Stipulation with its exhibits, drafting the motions for preliminary and final approval of the settlement, serving as Claims Administrator, and discussing the Settlement with Class Members. Pechman Dec. ¶¶ 10, 13, 14–16, 18–19, 22, 29, 32, 34, 35–36, 41–42, 48, 50–52, 56, 65, 82; Ex. 4. Notably, the fee requested also compensates Class Counsel for future work it will perform as Claims Administrator communicating with Class Members, ensuring compliance with the Stipulation, and mailing out the Settlement Checks. Pechman Decl. ¶¶ 29, 65, 79 n. 3; Ex. 1 §§ VI(1), XVI; *see also Karic*, 2016 WL 1745037, at *8 ("[T]his fee award also

18

compensates counsel for time required to administer the Settlement Fund in the future, including answering class members' questions.").

The second and third *Goldberger* factors, the magnitude, complexity, and the risk of the litigation, also favor approval of the fees requested. *See* 209 F.3d at 50. The Action has been ongoing for almost 1.5 years and involves wage-and-hour issues on a complex class and collective action hybrid basis under the NYLL and FLSA. *Karic*, 2016 WL 1745037, at *5 ("[C]lass actions, especially in the context of FLSA claims, are inherently complex."). The Action also involves a dispute as to whether Plaintiff can represent the Class on her alleged wage notices claim under NYLL § 195(1).

The fourth *Goldberger* factor, the quality of the representation, favors approval of the fees requested. 209 F.3d at 50. Class Counsel is experienced in litigating wage-and-hour class actions. Pechman Decl. ¶¶ 64–73. The results here speak for themselves: Class Members will receive 160% of their unpaid overtime wages. *See* Ex. F; Ex. 2. In light of this significant recovery for Class Members, the fee requested in relation to the settlement (the fifth *Goldberger* factor) is reasonable and consistent with fees regularly awarded by courts in this circuit. *See, e.g.*, *Karic*, 2016 WL 1745037, at *8 ("Courts in this Circuit often approve requests for attorneys' fees amounting to 33.3% of a settlement fund."); *Sierra*, 2015 WL 10912856, at *7 (same).

Last, approving the fees requested is consistent with public policy, the sixth *Goldberger* factor. *See, e.g.*, *Caballero*, 2018 WL 6435900, at *6 ("[T]he public policy goal of providing an incentive for lawyers to take on complicated actions that assisted vulnerable communities is furthered by the attorneys' fee award in this case."); *Donnelly*, 2014 WL 12769046, at *7 ("[P]ublic policy favors a common fund attorneys' fee award in wage and hour class action lawsuits."); *Flores*, 2014 WL 321831, at *8 (same). "The percentage-of-the-fund method also promotes early resolution" by "discourag[ing] plaintiffs' lawyers

from running up their billable hours, one of the most significant downsides of the lodestar method." *Donnelly*, 2014 WL 12769046, at *8. This is because the "FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights." *Flores*, 2014 WL 321831, at *8. In FLSA and NYLL actions, attorneys takes on the role of "private attorneys general," who must be "adequately compensated for their efforts." *Zeltser*, 2014 WL 4816134, at *8

Based on the significant amount of work performed, Class Counsel's lodestar to date exceeds $75,000.00, approximately 60% higher than percentage of the fund requested as fees. Pechman Decl. ¶¶ 77–78; Ex. 4. That is, a lodestar cross-check in this Action results in a multiplier lower than one, amply justifying the fees requested. *See, e.g.*, *Donnelly*, 2014 WL 12769046, at *8 ("Courts regularly award lodestar multipliers between two to six times [the] lodestar," and awarding fees based on a 2.35 times lodestar multiplier "at the lower range of what courts have approved").

### B.    Class Counsel's Costs Should Be Reimbursed

"Courts typically allow counsel to recover their reasonable out-of-pocket expenses." *Donelly*, 2014 WL 12769046, at *9; *see also Karic*, 2016 WL 1745037, at *9. Here, Class Counsel requests reimbursement of $633.70 for costs incurred, and to be incurred, prosecuting this Action, which is less than the potential $850.00 Class Members were notified of in their Notice Materials. *See* Ex. B § 3; *Karic*, 2016 WL 1745037, at *9. Costs incurred are $400.00 for the Court's filing fee, $88.80 for the mailing of Notice Materials to Class Members, and $104.40 for printing of the Notice Materials. Pechman Decl. ¶ 79.

The mailing on March 6, 2019, consisted of fifty-two letters at $0.80 per letter (*i.e.*, $41.60) and thirty-two letters at $1.30 per letter (*i.e.*, $41.60).[4]  *Id.* ¶ 46.  On April 5, 2019, Class Counsel mailed the letter to Rosa Olivia for $0.80.  *Id.* ¶ 56.  On April 16, 2019, Class Counsel mailed six more envelopes at $0.80 per envelope (*i.e.*, $4.80, two to the Class Members whose addresses were located and four re-mailings to Class Members whose mailings had been returned as undeliverable).  *Id.* ¶¶ 49, 57.  In total, this amounts to $88.80 in postage charges.  *Id.* ¶ 79.

Each mailing to Class Members included twelve pages, six pages of the notice in Spanish, five pages of the notice in English, and a one-page change of address form.  *Id.* ¶¶ 43, 79; *see also* Exs. B & C.  There were 87 mailings, amounting to 1,044 pages, or $104.40 at $0.10 per page.  Pechman Decl. ¶ 79; *see also, e.g.*, *Cabrera v. Schafer*, No. 12 Civ. 6323 (ADS)(AKT), 2017 WL 9512409, at *16 (E.D.N.Y. Feb. 17, 2017) (finding "ten cents per page . . . consistent with a reasonable commercial rate" for photocopying and printing); *Houston v. Cotter*, 234 F. Supp. 3d 392, 413 (E.D.N.Y. 2017) (noting "ten cents per page to be appropriate").

Last, the remaining $40.50 in costs requested is equal to the anticipated cost of mailing Settlement Checks to eighty-one Class Members at $0.50 per mailing.  Pechman Decl. ¶ 79.

---

[4] The difference in cost is due to different envelope sizes used.  Pechman Decl. ¶ 42.  Class Counsel seeks reimbursement for the cost of postage, not of the envelopes themselves.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion in its entirety and enter the proposed Final Approval Order (Ex. D).

Dated: New York, New York
         June 5, 2019

PECHMAN LAW GROUP PLLC


By:      s/ Louis Pechman
         Louis Pechman, Esq.
         Gianfranco J. Cuadra, Esq.
         Catalina Cadavid, Esq.
         488 Madison Avenue, 17th Floor
         New York, NY 10022
         pechman@pechmanlaw.com
         cuadra@pechmanlaw.com
         cadavid@pechmanlaw.com
         Tel.: (212) 583-9500
         *Attorneys for Plaintiff, the Rule 23 Class, and the FLSA Collective*

22