UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

REINA SORIANO, on behalf of herself and all
others similarly situated,

                           Plaintiff,

         -against-

D&J EXPORT, INC. d/b/a D&J EXPORT, INC.,
AMERICAN PREMIUM RAGS INC. d/b/a D&J
EXPORT, INC., JAIME SANCHEZ, and DANNY
SALMERON,

                    Defendants.

-------------------------------------------------------------------- X

**18 Civ. 194 (RLM)**

## DECLARATION OF LOUIS PECHMAN IN SUPPORT OF
## FINAL CLASS ACTION SETTLEMENT APPROVAL

Louis Pechman, under penalty of perjury, states as follows:

1.      I am the principal attorney at Pechman Law Group PLLC ("PLG") in New York, New York.  Along with Gianfranco J. Cuadra, a senior associate attorney at PLG, I am one of the attorneys primarily responsible for prosecuting the claims of Plaintiff Reina Soriano ("Plaintiff" or "Class Representative")[1] in this Action.

2.      I personally familiar with the facts and circumstances discussed below.

3.      Pursuant to the Court's Order dated February 4, 2019 (ECF No. 40),[2] this declaration is submitted in support of Plaintiff Reina Soriano's Unopposed Motion for Final Approval of the Class Action Settlement (the "Motion for Final Settlement Approval" or "Motion").

---

[1]    Unless otherwise defined, all capitalized terms and abbreviations in this Declaration have the meanings assigned to them in the Parties' Joint Stipulation of Class and Collective Settlement and Release (the "Stipulation"), enclosed as Exhibit 1.  Exhibits to the Stipulation are referenced here and in the Motion by the prefix "Ex." and their designated letter (*e.g.*, "Ex. A" refers to the CAFA Notice, Ex. 1 § II(2)).  Other exhibits enclosed to this Declaration are referenced by the prefix "Ex." and their designated numbers.

[2]    References to "ECF" are to the Court's Electronic Case Files system and docket in the Action.

**EXHIBITS ENCLOSED**

4.      Enclosed as Exhibit 1 is the Stipulation, with its enclosed Exhibits A to F. Exhibits C (in Spanish and in English), D (Proposed Final Approval Order), and F (Settlement Shares List) have been revised since Plaintiff last submitted them to the Court on January 11 (ECF No. 37) and February 8, 2019 (ECF No. 41).  Except for individual Class Members' Settlement Shares, the Class Action Notice submitted here is completely filled out with all information that was mailed to Class Members as part of their Notice Materials.  *Compare* Ex. C *with* ECF No. 41–1.  The Proposed Final Approval Order is likewise fully filled out with, for example, Class Counsel's costs requested.  *Compare* Ex. D *with* ECF No. 37–6.  Last, as is explained in more detail below, the Settlement Shares List now reflects Class Members' final Settlement Shares, as opposed to estimates, and Class Counsel's costs requested.  *Compare* Ex. F *with* ECF No. 37–8.

5.      Enclosed as Exhibit 2 are damages calculations for all Class Members, reflecting unpaid overtime wages owed, NYLL liquidated damages, NYLL interest, and WTPA statutory damages arising out of Plaintiff's wage notices and wage statement claims.  NYLL interest in this spreadsheet is calculated as of August 29, 2018, the date the Parties reached a settlement in principle.  *See* ECF No. 30.  Last, the fifth and final page of Exhibit 2 reflects damages calculated for Class Member Carla Sarahi Ventura Mencias. *See* Ex. 2 at 5.  Class Counsel calculated damages like those for Mencias for every one of the Class Members.  *See generally* Ex. 2.  Damages calculations for each of the Class Members are available for the Court's review if necessary.

6.      Enclosed as Exhibit 3 is a stipulation signed by Class Counsel and Counsel for Defendants on behalf of our respective clients.

7.      Enclosed as Exhibit 4 are Class Counsel's contemporaneously billing records for all PLG professionals who worked on the Action.

8.      Enclosed as Exhibit 5 are two returned mailings to Class Members reflecting postage costs.

## BACKGROUND AND PROCEDURAL HISTORY

9.      On January 11, 2018, Plaintiff commenced this putative class action under F.R.C.P. 23 ("Rule 23") and collective action under the FLSA on behalf of herself and all similarly situated non-exempt clothing packers, sorters, and loaders who worked for Defendants at D&J Export in Jamaica, New York in calendar year 2017.

10.     In her Complaint (ECF No. 1), Plaintiff alleges that starting in January 2017, D&J Export paid its non-exempt hourly-paid employees who worked more than forty hours per workweek (the "Class Members") using two paychecks.  ECF No. 1 ¶¶ 1, 35–38, 45.  Each paycheck's accompanying wage statement (a.k.a. paystub) reflected (a) a regular hourly rate of $11.00; and (b) fewer than forty hours worked, even though Class Members regularly worked over forty hours per workweek.  *Id.* ¶¶ 48–50.  For example, Plaintiff alleged working 48.25 hours in the workweek of January 13, 2017, and receiving two paychecks, each with an accompanying paystub reflecting fewer than forty hours worked.  *See id.* ¶ 46–47.  In total, Plaintiff's wages for this workweek were $530.75, equal to $11.00 multiplied by 48.25 hours worked.  *Id.*  Plaintiff claimed this policy or practice resulted in Class Members and her not being paid overtime wages at the rate of one and one-half times their regular hourly wage rates (*i.e.*, $16.50).  *Id.* ¶ 50.  Plaintiff also claimed that Defendants did not provide Class Members with wage notices within ten business days of hiring reflecting, *inter alia*, their regular and overtime wage rates.  *Id.* ¶ 52.

11.     Based on the foregoing, Plaintiff asserted claims against Defendants for failure to: (a) pay Class Members overtime wages under the FLSA and NYLL; (b) furnish Class Members with wage statements (*i.e.*, paystubs) with each payment of wages accurately reflecting, *inter alia*, their hours worked and their overtime wage rates, in

violation of the WTPA; and (c) furnish Class Members with wage notices accurately reflecting, *inter alia*, their regular and overtime rates of pay within ten business days of hiring, also in violation of the WTPA. *Id.* ¶¶ 2, 53–88.

12.     On March 5, 2018, Defendants filed an Answer generally denying all material allegations in the Complaint. ECF No. 10. Defendants also claimed that no class or collective action should be certified. ECF No. 10 ¶¶ 90–91, 97.

13.     On March 29, 2018, the Parties appeared for an initial pretrial conference before Chief Magistrate Judge Roanne L. Mann. ECF No. 12. There, Defendants' former counsel stated that Defendants would not withstand a significant judgment or settlement.

14.     The same day, the Court issued a case management order scheduling discovery. *Id.* On April 4, 2018, four opt-in plaintiffs (Oviedo, Hernandez, Macs-Pop, and Gonzalez) filed consents to join the FLSA collective action in this matter. ECF Nos. 13–16. For the rest of April, the Parties discussed whether to stipulate to the conditional certification of a collective action under the FLSA. Ultimately, Defendants rejected this proposal.

15.     The Parties also engaged in discovery. On April 27, 2018, Plaintiff served document requests and interrogatories on Defendants' former counsel. On May 24, 2018, Defendants' former counsel served document requests and interrogatories on Class Counsel. On May 31, 2018, Defendants produced responses and objections to Plaintiff's discovery requests. Defendants also served deposition notices for Plaintiff and the opt-in plaintiffs.

16.     From March through the end of May 2018, the Parties unsuccessfully discussed settlement, including the exchange of class-wide information so that Class Counsel could calculate damages for the Class.

## SETTLEMENT DISCUSSIONS AND MEDIATION

17.     On June 11, 2018, Anjanette Cabrera and Christopher Pardo of Costangy Brooks Smith & Prophete LLP ("Counsel for Defendants") called Mr. Cuadra of PLG to introduce themselves as Defendants' new attorneys.   Through counsel, the Parties discussed the exchange of all payroll and time records for all Class Members for settlement purposes in an attempt to resolve this Action.   Counsel for Defendants then replaced Defendants' former counsel on June 12, 2018.   ECF No. 19.

18.     Between June and August 2018, Defendants produced approximately 4,250 pages of payroll records for the Class Members.   Class Counsel analyzed all records in connection with drafting damages calculations.   *See* ECF No. 27.   On August 10, 2018, Plaintiff sent Defendants an initial settlement demand.   Thereafter, by electronic Order dated August 15, 2018, the Court scheduled a settlement conference for August 28, 2018.

19.     The Parties, including their respective counsel and the four opt-in plaintiffs, attended a 2.5-hour-long settlement conference before the Court on August 28, 2018.   ECF No. 29.   At the conference, Defendants shared financial information with the Court showing that if Plaintiff were successful on all of her claims, including her claims on a class basis, she would have much difficulty collecting on a judgment against Defendants.

20.     Based on the information provided at the settlement conference, especially information about Defendants' financial condition, the Court proposed a settlement: "Following lengthy settlement discussions, the Court makes a recommendation for a class settlement, which the Parties will discuss with one another and will advise the Court, via ECF by tomorrow, whether they agreed in principle to settle."   *Id.*

21.     On August 29, 2018, the Parties accepted the Court's proposed settlement of $115,000.00 on a class and collective action basis.   ECF No. 30.   On August 31, 2018, the

Parties submitted a proposed order referring the Action for all purposes to Chief Magistrate Judge Roanne L. Mann.  ECF No. 31.  District Judge Roslynn R. Mauskopf signed the proposed order on October 19, 2018.  ECF No. 34.

22.     Shortly after the settlement conference on August 28, 2018, the Parties realized that their settlement in principle did not account for all Class Members.  Between the end of August and mid-October 2018, Counsel for Defendants produced approximately 600 more pages of payroll records for previously unidentified Class Members.  Class Counsel recalculated damages for the Class, accounting for all Class Members, and the Parties renegotiated the settlement amount consistent with the principles discussed at the settlement conference before the Court.  On October 25, 2018, the Parties informed the Court of the foregoing.  ECF No. 33.  Working together, the Parties agreed to settle this matter for $137,500.00 (the "Settlement Payment").  *Id.*

23.     Due to delays caused by renegotiations, the drafting of settlement papers and the Motion for Preliminary Approval, and the holiday season, the Parties requested the deadline to file the Motion for Preliminary Approval be adjourned to January 11, 2019.  ECF No. 36.  The Court granted the Parties' request on December 19, 2018.

### THE PROPOSED SETTLEMENT TERMS AND STRUCTURE

24.     The Settlement provides for full resolution of all Class Members' FLSA, NYLL, and WTPA claims in exchange for the receipt of a Settlement Check, in the case of state law claims, and the payment of a Settlement Share, in the case of FLSA claims.

25.     With respect to NYLL and WTPA state law claims, all Class Members who neither object to nor opt-out of the Rule 23 class action Settlement will become "Settlement Class Members."  Ex. 1 § II(32); ECF No. 39 (changing "Participating Class Members" to "Settlement Class Members").  Soriano and all Settlement Class Members will receive a Settlement Check.  Ex. 1 § XVIII(2).  In exchange for his or her receipt of a

Settlement Check, Soriano and Settlement Class Members release Defendants from all wage-and-hour claims, including claims for unpaid wages, liquidated damages, interest, statutory damages, and attorneys' fees and costs, under the NYLL and WTPA that were pled or could have been pled in the Action.  *Id.* § XVIII(2).

26.     As noted, Soriano and all Settlement Class Members will receive a Settlement Check.  *Id.* § XVIII(2).  The back of every Settlement Check will contain the following statement next to the endorsement line:

**CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

By endorsing this check, I consent to join the FLSA collective action against Defendants styled *Soriano v. D&J Export, Inc., et al.*, No. 18 Civ. 194 and release Defendants from all wage-and-hour claims under the Fair Labor Standards Act and the New York Labor Law brought or that could have been brought in the Action, including but not limited to unpaid overtime wages and claims for statutory penalties under NYLL § 195.

_____   Dated:_____
Signature

Any modification or amendment of the above-language by the Class Member is unacceptable and may, at Defendants' sole discretion, void the Settlement Check.

Ex. 1 § XVI(5).  Accordingly, by endorsing and cashing his or her Settlement Check, a Settlement Class Member becomes a Claimant and thereby opts-in to this Action under 29 U.S.C. § 216(b).  To prevent fraud, the front of each Settlement Check will reflect the following statement in capitalized bold-typeface letters:  "**ATTENTION:  ONLY THE RECIPIENT TO WHOM THIS CHECK IS WRITTEN MAY DEPOSIT AND/OR CASH THIS CHECK.  THIS CHECK IS NON-TRANSFERABLE.**"  *Id.* § XVI(6).

27.     In exchange for the receipt of a Settlement Share (*i.e.*, the cash payment), Soriano and Claimants release the Released Parties from any and all wage-and-hour claims, including claims for unpaid wages, interest, liquidated damages, interest, and

attorneys' fees and costs, under the FLSA that were pled or that could have been pled in the Action. *Id.* § XVIII(3).

28.    Defendants shall deposit $137,500.00 (the "Settlement Payment") into the Qualified Settlement Fund, or QSF (*i.e.*, a bank account), by the later of April 1, 2019, or within five business days of the Court's Final Approval Order becoming final, as set forth in the Stipulation. *Id.* §§ II(22), (35), (39), XIV(1).

29.    To preserve resources, and as approved by the Court (ECF No. 40), Class Counsel has served as the Settlement Administrator (a.k.a. Claims Administrator). Ex. 1 §§ II(6), VI(1). In this role, Class Counsel performs significant work, such as coordinating the mailing of notices and Settlement Checks to Class Members; working with Plaintiff to locate Class Members' addresses whose mailings are returned as undeliverable; ensuring that Defendants pay the Settlement Payment and set up the Qualified Settlement Fund as required by the Stipulation; working with Defendants to monitor the cashing of Settlement Checks by Claimants; and handling all communications with Class Members concerning all matters pertaining to the Action. *Id.* § VI(1).

30.    The Stipulation includes a service award of $2,000.00 to the Class Representative, Class Counsel fees of 33.33% of the Settlement Payment (*i.e.*, $45,833.33), and up to $850.00 to Class Counsel for costs incurred in the prosecution of the Action and the administration of the Settlement. *Id.* § XI. The Class Representative alone, not the rest of the Class Members, releases all of her claims against Defendants in exchange for her eligibility for a service award. *Id.* § XVIII(1).

31.    The "Net QSF" is the $89,032.97 remaining in the QSF after deducting the Class Representative Payment and attorneys' fees and costs. *See id.* XV(1), Ex. F at 2.

32.    Class Counsel calculated damages for each Class Member. *See* Ex. F (reflecting "OT Wages Owed" in third column); *see also* Ex. 2. Each Class Member's

Settlement Share equals his or her percentage of the sum of all unpaid overtime wages for all Class Members multiplied by the Net QSF.  *See* Ex. 1 § II(40), Ex. F.  For example, Soriano's total unpaid overtime wages equal $750.75.  Ex. F at 1.  Her percentage of damages, 1.356375%, equals her damages of $750.75 divided by the sum of all Class Member's damages, $55,349.73.  *Id.*  Accordingly, Soriano's Settlement Share equals 1.356375% multiplied by $89,032.97, or $1,207.62, rounded to the nearest cent.  *Id.*

## PRELIMINARY APPROVAL AND MAILING OF NOTICES

33.     Defendants executed the Stipulation on December 24, 2018, and the Class Representative, on behalf of herself and the Class, executed it on January 2, 2019.  Ex. 1.

34.     On July 11, 2019, Plaintiff filed her Unopposed Motion for Preliminary Approval of Class Settlement and Provisional Certification of Settlement Class and supporting documents.  ECF Nos. 37–38.

35.     Thereafter, on February 4, 2019, the Court held a telephone conference with the Parties to discuss minor changes to the Stipulation, such as "changing references to 'Participating Class Members' to 'Settlement Class Members,'" and ordered the Parties to make some additional revisions to the Class Notice.  ECF No. 39.  On the same day, the Court issued an order preliminarily approving the Settlement.  ECF No. 40 (the "Preliminary Approval Order").

36.     On February 8, 2019, the Parties submitted the revised Class Notice for the Court's review.  ECF No. 40.  Later that day, the Court approved the revised Class Notice by electronic Order.

37.     On February 8, 2019, Counsel for Defendants mailed the CAFA Notice to the Offices of the United States and New York State Attorneys General, as required by the Stipulation.  Ex. 1 § VII.

38.    On February 19, 2019, Counsel for Defendants provided an initial version of the list of all potential Class Members, as required by the Stipulation. Ex. 1 § 1(a). The initial listing provided did not include several telephone numbers or mailing addresses. On February 20, 2019, Counsel for Defendants provided an updated list, which included more telephone numbers but omitted twenty Class Members. Class Counsel requested the missing information on February 20, 2019. Counsel for Defendants provided the rest of the information requested on March 4, 2019. The list provided on that date did not contain contact information for six of the Class Members, which Class Counsel explained to Counsel for Defendants.

39.    On March 5, 2019, Class Counsel sent Counsel for Defendants a Spanish language version of the Class Notice, which Counsel for Defendants approved later that day. On the same day, Counsel for Defendants explained that D&J Export lacks some of the information requested for Class Members. On March 6, 2019, Counsel for Defendants provided telephone numbers for two of the Class Members for whom there previously was no contact information provided.

40.    By March 6, 2019, Defendants had provided contact information for most of the Class Members. However, Defendants lacked contact information for seven of the Class Members. In addition to this, D&J Export only had telephone numbers, and no other contact information, for eleven other Class Members. In total, D&J Export, and by extension Class Counsel serving as the Claims Administrator, did not have mailing information for eighteen of the Class Members.

41.    Class Counsel, as Claims Administrator, reviewed the list and other contact information that Defendants had provided. In doing so, and by calling Class Members, Class Counsel determined that there were three individuals who appeared in the Settlement Shares List twice (*i.e.*, they were duplicate entries): (a) Juana M. Rodriguez

was the same as Juana Rodriguez; (b) Marta Senaida Rosales was the same as Marta Rosales; and (c) Sandra C. Gonzalez was the same as Sandra Cubias.  After removing duplicates from the list, Class Counsel determined that there were 102 Class Members, not 105 as previously thought and stated to the Court.  *See* ECF No. 37–8.

42.     On March 6, 2019, Class Counsel, serving as Claims Administrator, mailed to Notice Materials to eighty-four Class Members.  Postage for fifty-two of these letters cost $0.80 per letter (for a total of $41.60) and $1.30 per letter for the remaining thirty-two letters (*i.e.*, $41.60).  The different postage prices are due to different envelope sizes used. Copies of two envelopes mailed, reflecting the postage costs, are enclosed as Exhibit 5.

43.     Each mailing to Class Members contained the Spanish language notice, consisting of six pages, the English language notice, consisting of five pages, and a one-page change of address form, for a total of twelve pages per mailing.  *See* Exs. B & C.

44.     The Class Notices sent to each Class Member reflected each Class Member's individual estimated Settlement Share and the formula used to calculated it:

> Your "Settlement Share" was calculated based upon your percentage of the total damages for all class members for unpaid overtime wages in the Litigation. Class Counsel calculated your percentage of damages by dividing your allegedly unpaid overtime wages by the sum of all unpaid overtime wages for all class members. After the deduction from the Settlement Payment of litigation costs, attorney's fees, and service payments (leaving as the remainder the "Net Settlement Amount"), your percentage of damages was multiplied by the Net Settlement Amount. The resulting number is your Settlement Share. D&J Export will make a settlement payment to all class members who do not exclude themselves from this Settlement (the "Settlement Class Members").
> **BASED ON THE FOREGOING, YOUR ESTIMATED SETTLEMENT SHARE IS: $_____.**

Ex. C ¶ 3.

45.     The Class Notice explains to Class Members what the lawsuit is about and, if they choose to do so, how to exclude themselves from or object to the Settlement.  *Id.* ¶¶ 2, 7, 9.  The Class Notice informs Class Members that there is a "statute of limitations

(a time limit) for you to file a lawsuit" if they choose to opt-out of the Settlement. *Id.* ¶ 7. It includes a description of the nature of the Action and the class action claims. *Id.* ¶ 1. The Class Notice further explains Defendants' position and defenses. *Id.* ¶ 2.

46. The Class Notice explains that Class Members give up rights under New York law in exchange for receipt of a Settlement Check as Settlement Class Members. *Id.* ¶¶ 5–6. It also explains that they give up rights under the FLSA in exchange for depositing/cashing their checks as Claimants. *Id.* ¶ 6. The Class Notice further explains to Class Members that they are represented by PLG, but they have the right to retain another attorney at their own expense. *Id.* ¶ 11. Finally, the Class Notice states that Class Members should contact Class Counsel, and not the Court, with questions. *Id.* ¶¶ 10, 11.

47. The Class Notice explains Settlement Class Members will have 120 days from the date of the mailing of Settlement Checks to cash/deposit them. *Id.* ¶ 3. Checks not cashed by the 121st day after mailing will be void and its proceeds will revert back to Defendants. *Id.* All Settlement payments will be made under IRS Tax Form 1099. *Id.*

48. Between March 6 and the end of April 2019, PLG worked with the Class Representative in an attempt to locate contact information for missing Class Members. On different occasions, Class Counsel called the telephone numbers provided for Class Members. Four of the telephone numbers were either out of service or incorrect (*i.e.*, they were not the Class Members' phone numbers). The other seven Class Members for whom we received telephone numbers did not call us back.

49. D&J Export did not have other contact information for these and seven other individuals, and the Class Representative could not locate them. The Class Representative worked with other Class Members and eventually located two more addresses for the missing Class Members, to whom Class Counsel mailed the Notice Materials on April 16, 2019, at $0.80 per mailing (*i.e.*, $1.60).

50. The other sixteen Class Members could not be located. When the Class Representative was unable to find them, Class Counsel contacted all Class Members who worked at D&J during the same periods as the missing Class Members. The Class Members we spoke to could not recall the missing Class Members or, in some instances, recalled who they were but neither had their contact information nor kept in touch with them. As a last resort, Class Counsel conducted social media searches (*e.g.*, Facebook) for missing Class Members. Unfortunately, the searches were not fruitful. Because some of the Class Members' names were common (*e.g.*, "Maria Lopez"), we did not find them. Nevertheless, although we have not yet found the sixteen missing Class Members for whom we lack contact information, we have continued to contact Class Members hoping one of them will help us find the missing individuals. For example, on May 24, 2019, Class Counsel was able to obtain a new telephone number for Walter Lopez, one of the missing Class Members, and left him a voicemail.

51. On March 6, 2019, the day Class Counsel mailed the Notice Materials, the Class Representative found Rosa Olivia, a Class Member for whom Class Counsel had not received payroll records and who claimed to have worked at D&J Export. Class Counsel spoke with Ms. Olivia about her claims, and the Class Representative confirmed she should be in the Class. Based on these statements, Class Counsel contacted Counsel for Defendants about Ms. Olivia in the afternoon of March 6, 2019. Including Rosa Olivia, the number of Class Members in the Class increased to 103.

52. On or about March 11, 2019, Class Counsel received a call from Juan Carlos Rodriguez, one of the Class Members. He stated that his Settlement Share could not be correct, because he recalled working many hours at D&J Export throughout the Class Period. Class Counsel contacted Counsel for Defendants on March 12, 2019, about his payroll records and to follow up about Ms. Olivia's records. On March 30, 2019, Counsel

for Defendants produced the payroll records for Ms. Olivia.  They produced additional payroll records for Mr. Rodriguez on April 1, 2019.

53.     Based on the information produced, Class Counsel calculated that Rosa Olivia's unpaid overtime wages were $176.00.  Ex. 2 at 3.  Juan Carlos Rodriguez's total unpaid overtime wages were $1,740.86, not $172.81 as previously thought.  *Compare id.* (reflecting $1,740.86 in "OT Wages Owed") *with* ECF No. 37–8 at 2 (reflecting $172.81 in "OT Wages Owed").

54.     As noted, under the Stipulation, the Net QSF is shared proportionally among Class Members based on their percentage of damages.  *See* Ex. 1 § XV(2); Ex. F. After adding Olivia's damages and Rodriguez's full damages, the estimated Settlement Shares of each Class Member decreased, because more of the Net QSF had to be shared with the two Class Members.  The Parties discovered this only after the Notice Materials, which reflect each Class Member's estimated Settlement Share, had already been mailed.

55.     In good faith, to avoid reducing the estimated Settlement Shares that had already been mailed to Class Members on March 6, 2019 (*see* Ex. C), Defendants agreed to pay the portion of Mr. Rodriguez's Settlement Share in excess of the amount previously calculated for him and Ms. Olivia's entire Settlement Share separately from the Net QSF. The Parties executed a stipulation to this effect on May 24, 2019.  *See* Ex. 3.

56.     Class Counsel mailed Ms. Olivia her Notice Materials on April 5, 2019, for $0.80.  Mr. Rodriguez's revised estimated Settlement Share was not re-mailed; rather, Class Counsel told him what his new estimated Settlement Share by phone.

57.     Of the original eighty-four mailings, ten were returned as undeliverable with no forwarding addresses.  With the Class Representative, Class Counsel found new mailing addresses for four of the Class Members whose mailings were returned.  Class Counsel re-mailed those four mailings on April 16, 2019, at $0.80 per letter (*i.e.*, $3.20).

58.     In total, of the 103 Class Members, eight-one received the Notice Materials by mail.  Twenty-two Class Members have not been located, but Class Counsel continues working with the Class Representative, Defendants, and Class Members in an attempt to locate them.  For example, on May 29, 2019, Counsel for Defendants provided new telephone numbers for two of the missing Class Members and agreed to continue searching for new addresses for them.

59.     No Class Member opted out of or object to the Settlement.

60.     Since March 2019, approximately ten Class Members have called PLG to discuss the Settlement.  They spoke in Spanish with PLG and expressed approval of the settlement terms, including their appreciation for PLG's efforts on behalf of the workers at D&J Export.

## ARGUMENT

### I.     The Court Should Grant the Motion for Final Approval in Full

61.     For the reasons detailed in the accompanying unopposed memorandum of law in support of final settlement approval, the Court should grant the Motion for Final Approval and adopt in full the Proposed Final Approval Order.  *See* Ex. D.

### II.     Class Counsel Should Be Awarded Its Fees and Costs Requested

62.     PLG represented Plaintiff and the class and collective in this Action.  PLG's attorneys are competent and experienced wage-and-hour counsel.  As set forth in their retainer agreements with the firm, PLG agreed to represent Plaintiff and the opt-in plaintiffs purely on a contingency fee basis of 33.33% of whatever amount was recovered after reimbursement of costs incurred in the prosecution of the Action.

63.     PLG meets all relevant criteria for appointment as Class Counsel under Rule 23 for purposes of settlement.  The firm has done substantial work identifying, investigating, prosecuting, and settling the claims; has substantial experience prosecuting

and settling wage-and-hour actions, including class actions; is well-versed in wage-and-hour and class action law; and is well-qualified to represent the interests of the Class Members.

### A.     Class Counsel's Background and Experience

64.     PLG specializes in representing both workers and businesses in workplace disputes.  We have advocated for busboys and construction workers as well as corporate executives and Fortune 500 companies.  Our experience with and ability to see all the angles of a dispute has earned us a reputation for resolving difficult cases.

65.     PLG meets all relevant criteria for appointment as class counsel under Rule 23.  The firm has done substantial work identifying, investigating, prosecuting, and settling the claims; has substantial experience prosecuting and settling wage-and-hour actions, including class actions; is well-versed in wage-and-hour and class action law; and is well-qualified to represent the interests of the Class.  PLG has not identified any other lawsuits against Defendants by Defendants' employees.  Furthermore, PLG is serving as Claims Administrator in this Action.

66.     Since graduating from Fordham Law School over thirty years ago, I have specialized in labor and employment law.  I was a labor and employment attorney at Skadden, Arps, Slate, Meagher & Flom LLP; Vladeck, Waldman, Elias & Engelhard, P.C.; the Daily News; and Lambos & Giardino/Lambos & Junge.  From 1996 through 2014, I was a partner at Berke-Weiss & Pechman LLP.  On January 1, 2015, I founded PLG.

67.     I am licensed to practice law in the State of New York and am admitted in the Southern, Eastern, and Western Districts of New York, as well as the Second Circuit Court of Appeals.  I am also licensed to practice in the State of New Jersey and am admitted in the United States District Court for the District of New Jersey.

68.     Over the past several years, I have handled over 275 wage-and-hour cases, representing both employees and employers, including Fortune 500 corporations.  I have been appointed class counsel or counsel for FLSA collective classes in several wage-and-hour cases.  *See, e.g.*, *Manley v. Midan Rest., Inc.*, No. 14 Civ. 1693, 2017 WL 1155916, at *9 (S.D.N.Y. Mar. 27, 2017) ("Louis Pechman and the Pechman Law Group have significant experience representing both employers and employees in wage and hour actions in this District.  Louis Pechman has an excellent reputation in this District in the field of employment law."); *Carino v. Broadway & 166, LLC et al.*, No. 10 Civ. 8506, Docket No. 35 at *4 (S.D.NY. May 1, 2013) (recognizing Louis Pechman "used his considerable expertise in this wage and hour case to achieve an excellent result for the Class in a highly efficient manner"); *In re Chickie's and Pete's Wage & Hour Litig.*, No. 12 Civ. 6820, Docket Entry No. 80 at *1 (consolidating cases and appointing Louis Pechman as lead counsel) (E.D. Pa. Mar. 28, 2013); *Duchene v. Michael Cetta, Inc.*, No. 06 Civ. 4576, 2009 WL 5841175, at *2 (S.D.NY. Sept. 10, 2009) (recognizing Louis Pechman's "extensive experience in litigating wage and hour class actions").

69.     I speak frequently on employment law issues, with a focus on wage-and-hour topics.  Since 2010, I have moderated an annual program at the New York County Lawyers' Association on "How to Handle a Wage and Hour Case."  On October 6, 2015, I moderated a program at the City Bar on "Current Issues in Settlement of FLSA Cases," which included Judge Lewis A. Kaplan, Magistrate Judge Ronald L. Ellis, and Judge Brian M. Cogan.  On September 30, 2015, I moderated a Bloomberg BNA webinar entitled "Top Ten FLSA Litigation Issues: 2015 Edition," which included Magistrate Judge Ramon E. Reyes.  On March 2, 2016, I spoke at the New York Hospitality Restaurant Alliance on tipping policies at New York City restaurants.  On March 11, 2016, I spoke at the New York City Employment Law Institute on a panel titled, "Prosecuting & Defending Wage

and Hour Cases."  On September 29, 2016, I spoke in a panel, which included Magistrate Judge Steven M. Gold, in a Bloomberg BNA webinar titled "Top Ten FLSA Litigation Issues: 2016 Edition."  On October 24, 2016, I moderated a program at the New York City Bar titled "FLSA Settlement Issues One Year After *Cheeks*," presented by a panel including Chief Magistrate Judge Debra Freeman, District Judge Richard Sullivan, and Magistrate Judge Marilyn Go.  On June 12, 2017, I served as a panelist in the American Conference Institute's 30th National Forum on Wage & Hour Claims and Class Actions as part of a presentation titled "Trends in Wage & Hour Class & Collective Actions."  On October 24, 2017, I moderated a New York City Bar CLE-accredited program titled "FLSA Math:  How to Calculate Wage-Related Damages."  I again moderated this program on November 9, 2018.  On November 25, 2018, I moderated a program titled "How to Handle a Wage-Hour FLSA Case" at the New York County Lawyers Association.  I was also Chair of the Restaurant and Hospitality Law Committee of the Association of the Bar of the City of New York from 2014 to 2017.  This past Fall Semester, I served as an Adjunct Professor at Fordham University School of Law teaching a course titled "Wage Theft: Employee Rights and Employer Responsibilities."

70.    PLG is "A-V" rated by Martindale-Hubbell and I have been selected by my peers for inclusion in The Best Lawyers in America and in New York Super Lawyers since 2007.  PLG has been selected by Best Lawyers as a 2017 and 2018 "Tier 1" New York City law firm in the areas of "Employment Law – Individuals" as well as "Employment Law – Management."  I have also been selected as a Fellow of the American Bar Foundation, an honorary organization limited to 1% of attorneys who have demonstrated outstanding achievements and dedication to the highest principles of the legal profession.

71.    Gianfranco J. Cuadra, the primary associate attorney at PLG who has worked on this matter, received his J.D. degree *magna cum laude* from Hofstra Law School

in May 2009, where he was Research Editor of the Hofstra Law Review and an honorary member of the National Order of Scribes for outstanding legal writing.  Mr. Cuadra is admitted to practice in the United States District Courts for the Eastern, Western, and Southern Districts of New York and is a member in good standing of the New York State Bar.  He has worked at PLG as an associate attorney since March 2015 and has since been actively involved in the litigation of over sixty-five wage-and-hour cases ranging from individual plaintiff to class and collective actions on behalf of both employees and management.  He has independently conducted and defended depositions; attended court conferences; drafted, filed, and argued motions; counseled clients (both employees and management); conducted discovery; and settled single and multi-plaintiff wage-and-hour actions.  Mr. Cuadra was one of the panelists who presented at a New York City Bar CLE-accredited program titled "FLSA Math:  How to Calculate Wage-Related Damages" in October 2017.  Mr. Cuadra again presented as a panelist in this program on November 9, 2018.  Most recently, on November 15, 2018, Mr. Cuadra presented as a panelist in a one-day mediator training program organized by the United States District Court, Southern District of New York on how to mediate wage-and-hour disputes under the FLSA and NYLL.  Mr. Cuadra is a native Spanish speaker, Soriano's native language.  Prior to joining PLG in 2015, Mr. Cuadra worked as a litigation associate at Winston & Strawn LLP, where his hourly rate was $475.00.  Mr. Cuadra's hourly rate at PLG is $400.00 for all clients.

72.    Catalina Cadavid received her J.D. degree from Fordham University School of Law in May 2016, after which she began working at PLG.  Ms. Cadavid is a member in good standing of the New Jersey State Bar, the New York State Bar, and the Connecticut State Bar.  She is also admitted to the Southern and Eastern Districts of New York and to the District of New Jersey.  Since joining PLG, Ms. Cadavid has been actively involved in

the ligation of over thirty wage-and-hour matters.  Ms. Cadavid has independently conducted client meetings, taken depositions, drafted and filed pleadings, drafted discovery requests and responses, and participated in pretrial conferences, including settlement conferences.  Ms. Cadavid is a native Spanish speaker, Soriano's native language.  Ms. Cadavid's hourly rate at PLG is $225.00 for all clients.

73.    Cristina Brito is a paralegal at PLG who recently finished her second year as an evening law student at CUNY Law School, where she is a member of the Law Review.  Ms. Brito is a native Spanish speaker, Soriano's native language.  Ms. Brito worked mostly on the Settlement Administration in this matter, including putting together and distributing the Notice Materials, communicating with Class Members under attorneys' guidance, and attempting to contact and locate Class Members with the Class Representative.  Her hourly rate at PLG is $100.00 for all clients.

**B.    Class Counsel's Hourly Rates and Hours Billed Are Reasonable**

74.    As attorneys' fees for their work performed in this Action, as well as for work performed and to be performed as the Settlement Administrator, Class Counsel requests 33.33% of the QSF, totaling $45,833.33.  As is explained in the Final Approval Memo, this request is reasonable as an adequate percentage of the fund.  In any event, a lodestar cross-check further confirms that Class Counsel's requested fees are reasonable and should be granted. PLG's contemporaneous time records are enclosed as Exhibit 4.

75.    Since 2013, my billable hourly rate has been $600.00 for all clients.  Over one hundred of my clients have paid my fees at this rate throughout the last three years, including an advertising company, a shoe manufacturer, a money management firm, several restaurants, bakeries, a Broadway theater, a financial recruiting firm, a security guard company, and a transportation company.  We also represent individuals, including managing directors at Wall Street firms, executives, and other individuals, who retain my

services at the $600 per hour rate.  *See* Ex. 4.  The hourly rates of PLG attorneys are reasonable because they are the rates actually paid by our hourly-paying clients.

76.     Based on Class Counsel's extensive experience in precisely this type of litigation and our thorough familiarity with the factual and legal issues in this case, we believe that the hours reported, compiled from contemporaneous time records maintained by each professional participating in the case, are reasonable and were necessarily expended on the Action.

77.     Below is a chart summarizing the specific professionals, their hourly rates, and their total time worked on the Action:

| Attorney's Name | Position | Hours Billed | Hourly Rate | Fees |
|---|---|---|---|---|
| Louis Pechman | Partner | 5.90 | $600.00 | $3,540.00 |
| Gianfranco J. Cuadra | Associate | 126.00 | $400.00 | $50,400.00 |
| Catalina Cadavid | Associate | 67.10 | $225.00 | $15,097.50 |
| Cristina Brito | Paralegal | 67.10 | $100.00 | $6,710.00 |

**TOTAL FEES:   $75,747.50**

78.     The amount requested in fees is also reasonable because it is less than Class Counsel's lodestar.  In other words, the lodestar multiplier in this matter is *less than* 1, and, as such, the fees requested should be approved.

79.     Class Counsel also requests that the Court grant its request for reimbursement of all reasonable out-of-pocket expenses incurred in the prosecution of the Action, as summarized in the chart below:

| Class Counsel's Expense Incurred & Description | Amount |
|---|---|
| Filing fee in the Eastern District of New York. | $400.00 |
| Mailing of Notice Materials 91 times: (a) 59 letters at $0.80 per letter (*i.e.*, $47.20); and (b) 32 letters at $1.30 per letter (*i.e.*, $41.60).  *See supra* ¶¶ 42, 49, 56–57; Ex. 5. | $88.80 |
| Printing of Notice Materials for mailing to Class Members: 87 mailings x 12 pages per mailing, for 1,044 pages at $0.10 per page. | $104.40 |

| Expected cost of mailing Settlement Checks to 81 Class Members, assuming $0.50 per mailing.[3] | $40.50 |
| --- | --- |

**TOTAL COSTS: $633.70**

80.     For the foregoing reasons, as well as those set forth in the Final Approval Memo, the Court should grant Class Counsel's requests for fees and costs.

### III.     The Court Should Grant the Class Representative's Service Award Requested

81.     Soriano has fairly and adequately represented the interests of all Class Members, has no known conflicts with them, and has provided valuable input to Class Counsel at every stage of this Action.

82.     Soriano assisted with the preparation of the Complaint, provided her wage statements as clear examples of alleged NYLL and FLSA violations against Defendants, attended and participated in the settlement conference, helped identify Rosa Olivia and contact information for two other Class Members, and shouldered the risks incurred as being the only named Plaintiff and Class Representative.  Furthermore, she will continue to aid Class Counsel in its attempts to locate contact information for more Class Members.

83.     In light of Soriano's significant contributions to the litigation, ultimate resolution, and Settlement administration of the Action, we respectfully request that the Court grant her request for a service award of $2,000.00.

84.     I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: New York, New York
   June 5, 2019


   s/ Louis Pechman
   Louis Pechman

---

[3]     If PLG obtains additional Class Members' contact information, it will pay for mailing of their Settlement Checks out-of-pocket without requesting additional reimbursement from the QSF.